110 N.J. Super. 24 (1970)
264 A.2d 253
IN THE MATTER OF THE PRESENTMENT OF THE ESSEX COUNTY GRAND JURY. HUGH J. ADDONIZIO, PETITIONER-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 1970.
Decided April 23, 1970.
*26 Before Judges KILKENNY, LABRECQUE and LEONARD.
Mr. Bernard Hellring argued the cause for appellant (Messrs. Hellring, Lindeman & Landau, attorneys; Mr. Edwin H. Stern on the brief).
Mr. Robert L. Podvey, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the court was delivered by KILKENNY, P.J.A.D.
Petitioner mayor of Newark appeals from an order made by the assignment judge of Essex County, denying his application to expunge from a presentment returned by the Essex County grand jury all references therein to the mayor. He also appeals from the denial of his application to examine all the minutes of this grand jury, although he was given permission to examine fully all the minutes relating to him.
We have been advised by the mayor's attorney that he has received a copy of the mayor's testimony given on September 17, 1968 before the 15th Essex County grand jury of the 1967 term.
*27 The mayor makes a fundamental challenge as to the propriety of a grand jury making any presentment of the kind herein. We find no merit in this contention. Our present 1947 State Constitution, Art. I, par. 8, expressly provides for the "presentment or indictment of a grand jury." The word "presentment" therein was construed by our Supreme Court to mean "presentments of public affairs as they had been known in New Jersey from earliest Colonial times." In re Camden County Grand Jury, 10 N.J. 23, 65 (1952).
Our Supreme Court has never doubted the power of a grand jury to make a presentment of matters of public concern unaccompanied by indictments. Its 1969 rules contain express provisions regarding presentments. R. 3:6-9. So did the prior rules. R.R. 3:3-9. The contents of presentments have been challenged on motions to expunge them or parts of them. But the Supreme Court decisions have never questioned the grand jury's function in this regard. For the history of presentments, see In re Camden County Grand Jury, supra. For some other cases recognizing the right of a grand jury to make presentments such as that involved herein, see In re Messano, 16 N.J. 142 (1954); In re Monmouth County Grand Jury, 24 N.J. 318 (1957); In re Presentment of Camden County Grand Jury, 34 N.J. 378 (1961); In re Presentment of Essex County Grand Jury, 46 N.J. 467 (1966).
Despite all this, we are asked by the mayor to declare it beyond the power of a grand jury to return a presentment of the kind involved herein and to declare unconstitutional the rule of our Supreme Court prescribing the procedure to be followed on the return of a presentment. Even were we free to do so  which we are not  we observe no valid meritorious basis for any such declaration of invalidity.
A grand jury, by means of a presentment, may call to the attention of the public conditions within the county which, in its view, ought to be remedied. All the *28 cases and the rule of court cited above attest thereto. It may not substitute a presentment for an indictment. If the condition complained of and the person or persons involved therein ought properly be the subject of an indictment, the grand jury's duty is to indict. In re Messano, supra, 16 N.J., at 147; In re Monmouth County Grand Jury, supra, 24 N.J., at 323. A grand jury, in a presentment, may censure a public official for some nonindictable conduct on his part. R.R. 3:3-9(c), now R. 3:6-9, expressly so provides.
R. 3:6-9 (1969) and its predecessor is simply an expression of the rule of law recognized by our Supreme Court in the several cases hereinbefore mentioned. It provides, among other things:
(a) Finding. A presentment may be made only upon the concurrence of 12 or more jurors. It may refer to public affairs or conditions, but it may censure a public official only where his association with the deprecated public affairs or conditions is intimately and inescapably a part of them.
The assignment judge shall examine the presentment. If it appears that a crime has been committed for which an indictment may be had, he must refer the presentment back to the grand jury with appropriate instructions. If a public official is censured, the proof must be conclusive that the condemned matter is inextricably related to non-criminal failure to discharge his public duty.
The condition requiring public attention and noted in the instant presentment was the widespread existence of gambling activities in the City of Newark and the lack of adequate law enforcement to stamp out this evil. It noted that a special gambling squad had been set up by the police director, had done very effective work for about six weeks and then, for some unknown reason, been disbanded. It noted that the mayor had told it that he had not been notified of the disbanding of this special squad and had nothing to do with this action. It suggested that the mayor *29 should seek a dismissal of the police director, against whom an indictment for nonfeasance had been returned, which, following a jury trial, had been dismissed by the trial judge for want of sufficient evidence. The reference in the presentment was to a "non-criminal" failure on the mayor's part to discharge his public duty. The grand jury would have the mayor bring about the dismissal of the Director of Public Safety.
The presentment criticized the mayor for a public utterance in which he more or less minimized illegal gambling, in the light of the public recognition of various forms of legal gambling at racetracks and the like. In brief, he played down gambling as a grave evil. It was the grand jury's opinion that such public utterances by the mayor could have some contributory effect upon a lack of vigorous law enforcement on the local level.
No charge of indictable conduct by the mayor was made in the presentment. At most, there was criticism and public censure. Many people entertain conflicting views as to gambling. Some see in it no evil, while others entertain an opposite view. The broad prohibition in our State Constitution, forbidding the Legislature from enacting laws authorizing gambling (Art. IV, § VII, par. 2), has been modified by amendments to the Constitution, approved at the polls by the people, authorizing gambling at the racetracks, bingo, raffles and boardwalk games of chance. We have presently before our Legislature a proposal to amend the State Constitution further  to convert Atlantic City, which describes itself as "The Playground of America," into the "Las Vegas of the East." The averred purpose is to gain additional state revenue.
Thus, the mayor's admitted and publicly expressed views on gambling did not involve indictable conduct. The grand jury's expression of opinion as to the potential effect of the mayor's admitted public utterance on police enforcement of gambling laws was legitimate criticism. There was testimony before the grand jury of illegal gambling of great *30 magnitude in the city. The mayor is fully aware of those assertions. Censure of the mayor for his public minimizing of violation of the gambling laws did not exceed the permissible censure of a public official, as permitted in a presentment.
We pause to note that various deletions were made by the assignment judge in the language of the presentment, where the language employed was deemed to exceed the bounds of propriety. These deletions safeguarded the mayor from any adverse inference of personal involvement.
We inquired at oral argument of the mayor's counsel as to what crime, if any, the mayor was being charged with in the presentment. He responded: "N.J.S.A. 2A:135-1." This statute provides:
A public officer who willfully refuses or neglects to perform any duty imposed upon him by law, is guilty of a misdemeanor.
When pressed for a specification of what duty imposed by law the mayor was being charged with having willfully refused or neglected to perform, no specification was presented. In fact, the mayor's counsel sent us a letter, after oral argument, in which he advised us:
The Petitioner-Appellant did not claim below and does not claim here that the Presentment charges the Petitioner-Appellant with any indictable offense.
In brief, the response to our inquiry at oral argument should have been simply, "None."
Thus, the facts herein cannot be equated with In re Messano, supra, where the presentment charged an indictable offense and was improperly used by reason thereof. Ultimately, upon a remand to the grand jury in that case, a "no bill" was returned.
Here, the criticism was directed toward the mayor's attitude regarding gambling in the city. But misconduct in office "is not just an attitude. It is action; or it is non-action *31 with respect to specific incidents." State v. Jenkins, 136 N.J.L. 112, 113 (Sup. Ct. 1947) (emphasis added).
The mayor argues that the assignment judge erroneously denied him a full and adequate examination of the grand jury minutes and a hearing.
The judgment under review granted the mayor "the opportunity to examine his own testimony before the Fifteenth Essex County Grand Jury of the 1967 Term." This was the grand jury which returned the presentment, after evidence presented to it on the subject of gambling in Newark. Two prior grand juries had conducted inquiries into gambling activities in Newark and into the effectiveness of the enforcement of the gambling laws. Those juries had found the Newark police department lacking in organization and ill-equipped to wage an effective and vigorous war against organized crime. The instant grand jury found that the circumstances referred to by its predecessors still existed. It recited a multiplicity of facts in support of its conclusions.
The thrust of the grand jury condemnation was directed toward the director of the police department. It pointed to the mayor's testimony before it that the director's disbanding the special gambling squad was "without the agreement of or notification to the Mayor of the City." In its specific recommendations no mention was made of the mayor specifically. The only possible inferential reference was in that part of recommendation, (i), wherein the grand jury stated, among other things, "it is in the best interest of the public that he [director of the police department] be removed from the position of Director * * *." There was no recital as to who would do the removing or whether the mayor had the power, by himself and without more, to remove the director.
We appreciate that R.R. 3:3-9(c), now R. 3:6-9, provides that if a presentment censures a public official and the assignment judge determines not to strike, the censured official "may examine the grand jury minutes fully, under such reasonable supervision as the court deems advisable, and be permitted to introduce additional evidence to expose *32 any deficiency." But here the assignment judge did strike those passages from the presentment deemed by him to be improper or undue public censure, if such it could be called. Moreover, he gave the mayor the right to examine the minutes so far as they related to him. Those references were to the mayor's own testimony and his admitted public utterance, of which he had full knowledge. No valid reason for a roving examination of all the minutes has been demonstrated.
The order under review is in all respects affirmed.