198 N.J. Super. 236 (1985)
486 A.2d 944
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CPS CHEMICAL CO., INC., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1984.
Decided January 18, 1985.
*238 Before Judges PRESSLER, BRODY and HAVEY.
Steven Pasternak, Deputy Attorney General, argued the cause for appellant (Irwin I. Kimmelman, Attorney General of *239 New Jersey, attorney; Steven Pasternak, of counsel and on the brief).
James A. Plaisted argued the cause for respondent Philip Meisel (Walder, Sondak, Berkeley & Brogan, attorneys; Justin P. Walder and James A. Plaisted, of counsel and on the brief).
Edward Dolan argued the cause for respondent CPS Chemical Co., Inc. (Edward Dolan joined in the brief for respondent Philip Meisel).
Damon Sedita argued the cause for respondent Jack Rowe (Schwartz, Tobia & Stanziale, attorneys; Theodore Schwartz, joined in the brief for respondent Philip Meisel).
Lee W. Shelly argued the cause for Peter Kalagias (Foley, Shelly & Niemann, attorneys; Lee W. Shelly, joined in the brief for respondent Philip Meisel).
Benedict & Altman, attorneys for respondent William Sisco (Joseph Benedict, joined in the brief for respondent Philip Meisel).
Sterns, Herbert & Weinroth, attorneys for respondent Madison Industries, Inc. (William J. Bigham, on the brief).
The opinion of the Court was delivered by PRESSLER, P.J.A.D.
The State of New Jersey, Division of Criminal Justice, appeals, on leave granted, from an order of the Superior Court, Law Division, requiring the State, on terms, to make available to defendants, CPS Chemical Co., Inc. and three of its officers and employees (CPS or CPS defendants), the transcripts of State grand jury proceedings resulting in the separate indictment of other criminal defendants, referred to for convenience as the Madison Industries defendants. We affirm.
The State grand jury returned a multi-count indictment against the CPS defendants in December 1983 charging them with numerous crimes arising out of their alleged discharge of *240 industrial waste by-products into a trunk line of the Old Bridge Township Sewer Authority (OBSA). The OBSA trunk line connects with the trunk line of the Middlesex County Utilities Authority (MCUA) at a point known as the Runyon Connection. From the Runyon Connection, sewage is carried to the MCUA plant for treatment. CPS is located on the OBSA line upstream from the Runyon Connection. Madison Industries is located on the OBSA line between CPS and the Runyon Connection. The factual theory of the case against CPS is that during a period from sometime in 1979 to May 1981, but particularly between January and May 1981, CPS discharged into the OBSA line a waste product known as FM-2 heels, a substance having the same general physical properties as a plastic jelly, and that it did so by liquifying the FM-2 heels with acetone, a hazardous product. These discharges, the State contends, obstructed the sewer lines at a point downstream from Madison and also caused explosions in the line whose precise location vis-a-vis CPS, Madison and the Runyon Connection is not altogether clear from the record, but appears to have been downstream from CPS.
Following the return of the indictment, the CPS defendants moved for, among other relief, disclosure to them of the State grand jury proceedings pursuant to which the Madison defendants had previously been indicted. That indictment had charged Madison, CPS's immediate downstream neighbor, with having discharged unidentified hazardous chemical wastes into the OBSA line from January 1975 to February 1980. The indictment was disposed of by the entry of guilty pleas by two of the Madison defendants and the dismissal or non-moval of the charges against the others. There has been consequently no trial of that indictment.
The basis of the CPS application was its assertion that Madison and not it was responsible for the obstruction and explosions in the sewer line. Its factual theory was that the specific waste products discharged by Madison, either themselves or in chemical combination with CPS's benign and legal *241 discharges, caused these problems, which had become manifest by reason of accumulation or delayed chemical action after Madison had stopped discharging, if in fact Madison had stopped. Proof of this theory depended, they asserted, on access to information respecting, for example, the precise chemical composition, quantity and timing of Madison's discharges. This information they believed to be contained in the Madison grand jury minutes and would not be otherwise available to them.
After giving the Madison defendants an opportunity to be heard, Judge Hoffman granted CPS's motion over their objection and that of the State, concluding that the Madison grand jury proceedings were relevant to the indictment against CPS and that the CPS defendants had a legitimate and compelling need for disclosure thereof in preparing their defense. His order prohibited the CPS defendants from disclosing the Madison grand jury transcript to third persons. The State, joined by the Madison defendants, appeals.
In challenging the disclosure order, the State argues that the rules of court do not authorize the disclosure of grand jury proceedings to a criminal defendant not indicted as a result thereof. It further argues that even if such discovery were authorized, the order here was improvidently entered since (1) only the assignment judge in charge of the State grand jury could have entered it, (2) the CPS defendants failed to demonstrate either a "particularized need" or a "compelling necessity" for the discovery and (3) the order was too broad. We disagree with all of these contentions.
First, we have no doubt that in a proper case and based on a proper showing, a criminal defendant may be afforded access to grand jury records other than those which resulted in his own indictment. We point out that even prior to the 1967 adoption of R.R. 3:5-11, the predecessor of R. 3:13-3, which first afforded criminal defendants a right of access to grand *242 jury testimony,[1] the New Jersey Supreme Court had held that the secrecy traditionally surrounding grand jury proceedings was subject to breach where so required by countervailing considerations of justice, fairness and truth. See, e.g., State v. Farmer, 45 N.J. 520 (1965), cert. den. 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967); State v. Clement, 40 N.J. 139 (1963); State v. Moffa, 36 N.J. 219 (1961).
The first codified step recognizing this right was to afford a defendant access to his own grand jury testimony. That was the full extent of former R.R. 3:5-11(a)(iii), followed by the 1969 adoption of R. 3:13-3(a)(3). That limited discovery right was apparently perceived as not having resulted in an undue compromise of the policy of grand jury secrecy. Accordingly, the rule was amended, effective September 1973, to extend defendant's discovery right to the grand jury testimony of all witnesses. The rule had, however, been construed as not encompassing grand jury colloquy, argument or instructions. See State v. Fisher, et al., 112 N.J. Super. 319 (Law Div. 1970). The Supreme Court evidently concluded that that interpretation was unduly restrictive and amended the rule again, effective September 1982, to extend its applicability to all recorded grand jury proceedings. The constant caveat through all these rule changes has been the State's opportunity, as in the case of all materials to which defendant is accorded discovery rights by the rule, to seek a protective order in special circumstances pursuant to R. 3:13-3(d).
R. 3:13-3(a)(3) as it now stands does not specifically limit the right to discovery of grand jury proceedings to those defendants whose indictments resulted therefrom. Indeed, State v. Moffa, supra, 36 N.J. 219, expressly recognized the potential need of a defendant for discovery of grand jury testimony resulting in another's indictment. Nevertheless, there is no *243 indication in the history of the rule suggesting that it was intended to accord a defendant a right of discovery to grand jury proceedings leading to another's indictment. We are, however, satisfied that even if the rule did not so intend, such discovery may nevertheless be authorized by general legal principles, as recently articulated by the Supreme Court in State v. Doliner, 96 N.J. 236 (1984).
We note that the primary procedural distinction between discovery of grand jury proceedings under R. 3:13-3(a)(3) and under general legal principles lies in the showing the applicant for discovery must make. If a defendant seeks discovery under the rule, he is routinely afforded access thereto and the burden is on the State to move for a protective order pursuant to R. 3:13-3(d) if it has cause to resist in whole or in part. An applicant seeking discovery under general legal principles is, however, obliged to show good cause for that relief and any disclosure, therefore, is subject to initial court approval. See State v. Doliner, supra, 96 N.J. at 246. Even if the applicant's need for the disclosure is established in general terms, the party objecting to it has the right to seek to limit or qualify its scope for good cause. We conclude that when a criminal defendant seeks discovery of other grand jury proceedings, court approval should be sought in the first instance. Accordingly, we conclude that the discovery sought here is available not under the rules but under Doliner principles.
Doliner makes clear that in the context of related civil litigation a party may be afforded access to prior and concluded grand jury proceedings where he is able to demonstrate that his need outweighs the public interest in grand jury secrecy. This balancing is, moreover, required to take into account the five basic reasons for secrecy enunciated by United States v. Rose, 215 F.2d 617, 628-629 (3d Cir.1954), as follows:
* * * (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the *244 witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.
Doliner further makes clear that when the grand jury proceedings have been concluded, "the first three factors will almost invariably disappear." 96 N.J. at 247. The fourth factor also will ordinarily not constitute a bar to discovery since "* * * in New Jersey every witness is on notice that his or her testimony will be disclosed to a defendant on request." Ibid. The fifth factor, the need to protect the innocent, is, of course, a matter whose applicability and effect require evaluation in each instance, and we address that factor in this case hereafter.
While application of the test of need presents a more difficult and individualized problem, it is at least clear that the availability of other routes to the discovery of relevant information is a significant consideration. A party to a civil proceeding ordinarily has available to him the whole panorama of discovery techniques provided for by the rules of court. He may find it more time-consuming or expensive or difficult to obtain information by pursuing those routes than by reviewing relevant grand jury proceedings, but in any event maintenance of grand jury secrecy in those circumstances will not ordinarily result in an adverse impact upon him for which he cannot compensate. See Doe v. Klein, 148 N.J. Super. 134 (App.Div. 1976). Cf. Viruet v. Sylvester, 131 N.J. Super. 599 (App.Div. 1975), certif. den. 68 N.J. 138 (1975). Where the party seeking access is a criminal defendant, however, he does not have available to him the compensating broad range of discovery techniques. His need is ipso facto more compelling than that of a party to civil litigation, and his application should accordingly be treated with a greater liberality.
The foregoing considerations compel us to reject the State's contention that Doliner should be read only as authorizing governmental agencies engaged in civil prosecutions to obtain *245 investigative materials produced by the government in criminal proceedings. Nothing in Doliner itself or in its underlying rationale suggests so restrictive a reading. The Doliner test focuses not on the identity or status of the applicant but rather on the applicant's specific needs for discovery as balanced against the policy reasons for maintaining grand jury secrecy.
Applying these principles here, we are satisfied for the reasons stated by Judge Hoffman and alluded to here, that the relevance of the Madison grand jury proceedings and the unavailability of the information therein contained by other methods bespeak defendants' need within the Doliner intendment. Defendants should not have to rely on the State's unsupported representation that the Madison transcripts can afford them no assistance. As Chief Justice Weintraub aptly observed in State v. Moffa, supra, "[a] defendant cannot be confined to so much of the scene as the State believes to be relevant." 36 N.J. at 222.
Beyond the question of basic judicial authority to grant the requested discovery, the State argues that in any event this discovery order could only have been entered by the assignment judge in charge of the State grand jury. We agree, however, with Judge Hoffman's perception that after the assignment judge has designated venue pursuant to N.J.S.A. 2A:73A-8, all further proceedings in the cause, including discovery, are within the control of the trial judge.
The State also argues that Judge Hoffman's order is too broad and may, in some unarticulated way, affect innocent persons or otherwise prejudice the public interest in the prosecution of the indictment against the CPS defendants. As we understand the State's position, it urges that if any discovery is to be made at all, the trial judge must himself first review the entire transcript and make available to defendants only those portions which he concludes that they reasonably require. We see no reason, however, for the judge to initially engage in this enterprise. The burden should be on the State to move, in *246 camera if appropriate, for a specific protective order redacting the transcripts before they are delivered. The Madison defendants should also have the opportunity to do so.
For the reasons herein stated, we affirm the order appealed from but stay its enforcement for a period of 30 days or for such further period as the trial court shall direct in order to afford the State and the Madison defendants the opportunity to apply for a protective order.
NOTES
[1] See generally as to the background of the adoption of the current criminal discovery rules, Report of the New Jersey Supreme Court Special Committee on Discovery in Criminal Cases, 90 N.J.L.J. Index page 209 (1967).