591 A.2d 614

IN THE MATTER OF AN APPLICATION FOR DISCLOSURE OF GRAND JURY TESTIMONY AND EXHIBITS FROM A STATE GRAND JURY INVESTIGATION.

Argued January 2, 1991—Decided June 25, 1991.

444

*Edward J. Farrell,* General Counsel, argued the cause for appellant, New Jersey Election Law Enforcement Commission (*Edward J. Farrell,* attorney; *Edward J. Farrell* and *Douglas S. Brierley,* on the briefs).

*Mark Paul Cronin,* Deputy Attorney General, argued the cause for respondent, State of New Jersey (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney).

*W. Hunt Dumont, John P. McDonald, George L. Schneider,* and *Peter Manahan,* argued the cause for respondents, The Company and Senior Executives R.B., R.K., W.M., J.M., R.L., W.K., M.H., R.C., J.S., R.H., R.W., R.E., and J.M. (*Robinson,*

*Wayne & La Sala,* attorneys for The Company and Senior Executives; *McDonald, Rogers & Rizzolo,* attorneys for J.M., R.L. and W.K.; *DeCotiis, Frino & Lundsten,* attorneys for R.C., J.S., R.H., and R.W.; *Connell, Foley & Geiser,* attorneys for R.B., R.K., and W.M.; *Lorber, Schneider, Nuzzi, Vichness & Bilinkas,* attorneys for M.H.; *W. Hunt Dumont* and *Donna M. du Beth,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

The exercise of judicial power in this appeal requires us to balance the public interest in the full disclosure of election financing against the public interest in maintaining the confidentiality of grand-jury proceedings. In *State v. Doliner,* 96 *N.J.* 236, 475 *A.*2d 552 (1984), we set forth standards governing disclosure of grand-jury materials to government agencies prosecuting civil actions. The Election Law Enforcement Commission (ELEC) seeks disclosure in this case of transcripts of testimony and documents produced before a State grand jury that had investigated allegations that respondent corporation (the Company) and certain of its senior officials had violated provisions of the New Jersey Campaign Contributions and Expenditures Reporting Act, *N.J.S.A.* 19:44A–1 to –47 (the Act). Although the grand jury returned no indictments, it handed up a presentment in which it recommended that the evidence presented before it should be turned over to ELEC for further administrative proceedings.

Pursuant to ELEC's request, the Attorney General filed a motion in the Law Division to compel disclosure of the transcript of the grand-jury proceedings. The court denied the motion, finding that ELEC had "made no independent effort whatsoever to investigate the matter" and therefore had not established a "strong showing of particularized need" sufficient to outweigh the public interest in preserving grand-jury secrecy. The Attorney General appealed, and the Appellate Division

granted ELEC's motion to intervene. In an unpublished opinion, the Appellate Division affirmed the trial court's ruling.

We granted ELEC's petition for certification, 122 *N.J.* 182, 584 *A.*2d 243 (1990), and now affirm the judgment of the Appellate Division. We do so, however, without prejudice to ELEC's right to reapply for disclosure of the grand-jury materials if the agency's good-faith effort to obtain the desired evidence through its own resources is unsuccessful.

## I

ELEC is the agency charged with enforcing the Act, whose "manifest objective * * * is to identify and attempt to regulate the significant flow of substantial wealth aimed at affecting the outcome of elections, public questions and the legislative process." *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n*, 135 *N.J.Super.* 537, 544, 343 *A.*2d 796 (Ch.Div.1975), *rev'd on other grounds*, 155 *N.J.Super.* 218, 382 *A.*2d 670 (App.Div.1977), *aff'd as modified*, 82 *N.J.* 57, 411 *A.*2d 168 (1980). The Act empowers ELEC to conduct hearings regarding possible violations of the statute and to impose penalties for such violations. *N.J.S.A.* 19:44A–6(b). To enable it to investigate alleged violations effectively and enforce compliance with the Act's provisions, ELEC has the authority to "issue subp[o]enas for the production of documents and the attendance of witnesses," *N.J.S.A.* 19:44A–6(b)(9), and, when necessary, to initiate civil actions in any court of competent jurisdiction. *N.J.S.A.* 19:44A–6(b).

The facts underlying ELEC's efforts to obtain the grandjury materials are undisputed. In October 1986, newspaper articles reported that a significant number of employees of the Company had contributed to the campaign of a gubernatorial candidate. The aggregate amount contributed by those employees constituted a substantial portion of that candidate's total contributions from private individuals. According to the articles, unnamed employees had alleged that the Company or its offi-

cers had either loaned or made gifts of the funds contributed by the employees. Shortly thereafter, ELEC initiated an investigation regarding those allegations. Believing that the alleged conduct warranted a criminal investigation, ELEC referred the matter to the Division of Criminal Justice in October 1986. At that time, ELEC discontinued its investigation.

The State impaneled a grand jury to investigate the alleged violations of the Act. The grand-jury panel was instructed that

if you find events or conditions which you have investigated which do not constitute an offense indictable under our law but which nevertheless are of such importance that they should be brought to the attention of the public and the officials concerned, you may return a presentment.

From October 1986 to October 1988 the grand jury heard testimony from forty witnesses during thirteen separate sessions. In October 1988, the grand jury issued a presentment in which it found that although the investigation revealed "an unusual pattern of contributions to more than one candidate for governor by the [respondent] company's employees, the spouses of those employees, and other relatives of those employees * * * the evidence was not sufficient to establish criminal violations of the law." Although it returned no indictments, the grand jury did recommend that

the record of the proceedings before it be referred to the ELEC for administrative proceedings under *N.J.S.A.* 19:44A–22 to determine whether civil penalties should be imposed against the company or any specific individuals associated with the company for having violated the proscriptions of *N.J.S.A.* 19:44A–20 by making loans to company employees, the spouses of company employees and other relatives of company employees, for the express purpose of inducing or enabling them to make political contributions to gubernatorial candidates.

In response to the presentment, ELEC sent a letter to the Division of Criminal Justice requesting that it "seek Court permission for ELEC to be granted access to the state grand jury testimony and evidence presented by the company's employees, the spouses of those employees, and the relatives of those employees." In its letter, ELEC indicated that it lacked the investigatory resources necessary to reconstruct the evidence that had been presented to the grand jury.

In December 1988 the Attorney General moved before the Law Division for an order authorizing disclosure and release of the grand-jury testimony and exhibits, supported by an affidavit from ELEC's Director of Review and Investigation. The affidavit noted that candidates are not required to retain campaign contribution records more than "four years after the date of the election to which they are relevant." *N.J.A.C.* 19:25–8.-2(a). Because the relevant election took place on November 5, 1985, ELEC alleged that it lacked the resources to undertake and complete the necessary investigation prior to November 5, 1989, after which date the contribution records would no longer have to be retained. Respondents opposed the motion.

The Law Division denied the Attorney General's motion. The court considered whether the Attorney General had shown sufficient grounds to outweigh the public interest in grand-jury secrecy, noting that ELEC's only asserted basis for overriding that interest was its lack of investigatory resources. The court found that reason insufficient, stating that "[a] showing of lack of manpower to conduct an investigation is of only marginal significance." The court therefore held that until ELEC made a "reasonable effort to conduct its own investigation and seek disclosure * * * there can be no showing of any need much less a strong showing * * * of a particularized need." Although the court denied the motion for disclosure, it did "not rule * * * that [ELEC] may never obtain access to the grand jury evidence."

ELEC was permitted to intervene before the Appellate Division, contending that the trial court had abused its discretion in denying ELEC access to the grand-jury materials, and, alternatively, that the Appellate Division should remand the matter to the trial court to allow ELEC to participate in a new plenary hearing. The Appellate Division affirmed the denial of the motion for disclosure substantially for the reasons expressed by the Law Division. Addressing ELEC's request for a remand, the court observed

that the Commission has proffered no additional reasons to this court which would justify reversing the order under review and remanding the matter for a new hearing. The Commission's argument that it lacks the manpower necessary to complete its investigation, that it suspended its investigation to accommodate the Attorney General, and that it is without records necessary to conduct a full and proper investigation into this matter, while undoubtedly true, provide no excuse for the Commission's failure to even attempt to investigate or acquire the requisite documents elsewhere. In short, the Grand Jury materials should not be disclosed to the Commission until it has made a reasonable effort to obtain the information elsewhere.

## II

Courts have consistently acknowledged the broad and unfettered investigative powers of the grand jury. *See United States v. Sells Eng'g, Inc.*, 463 *U.S.* 418, 423, 103 *S.Ct.* 3133, 3137, 77 *L.Ed.*2d 743, 752 (1983) *(Sells)*; *United States v. Calandra*, 414 *U.S.* 338, 343–44, 94 *S.Ct.* 613, 617–18, 38 *L.Ed.*2d 561, 568–69 (1974); *Blair v. United States*, 250 *U.S.* 273, 282, 39 *S.Ct.* 468, 471, 63 *L.Ed.* 979, 983 (1919); *State v. Doliner, supra*, 96 *N.J.* at 249, 475 *A.*2d 552. The grand jury " 'generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials.' " *Doliner, supra*, 96 *N.J.* at 249, 475 *A.*2d 552 (quoting *Sells, supra*, 463 *U.S.* at 423, 103 *S.Ct.* at 3137, 77 *L.Ed.*2d at 752). The extensive powers accorded the grand jury are necessary to enable it "to determine whether a crime has been committed and whether criminal investigations should be instituted against any person." *Calandra, supra*, 414 *U.S.* at 343–44, 94 *S.Ct.* at 617–18, 38 *L.Ed.*2d at 569.

The grand jury's duty to uncover criminal wrongdoing and screen out charges not warranting prosecution underlies the long-standing rule safeguarding the confidentiality of its proceedings. *Sells, supra*, 463 *U.S.* at 424, 103 *S.Ct.* at 3138, 77 *L.Ed.*2d at 752. In *Doliner*, we observed five policy considerations that justify grand-jury secrecy:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the

grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

[96 *N.J.* at 247, 475 *A*.2d 552 (quoting *United States v. Procter & Gamble*, 356 *U.S.* 677, 681 n. 6, 78 *S.Ct.* 983, 986 n. 6, 2 *L.Ed*.2d 1077, 1081 n. 6 (1958)).]

Federal and state cases have regularly relied on those grounds for grand-jury secrecy since they were set forth in *United States v. Amazon Industrial Chemical Corp.*, 55 *F*.2d 254, 261 (D.Md.1931). See, *e.g.*, *Sells, supra,* 463 *U.S.* at 424, 103 *S.Ct.* at 3138, 77 *L.Ed*.2d at 752–53; *Douglas Oil Co. v. Petrol Stops Northwest,* 441 *U.S.* 211, 219, 99 *S.Ct.* 1667, 1673, 60 *L.Ed*.2d 156, 165 (1979); *United States v. Rose,* 215 *F*.2d 617, 628–29 (3rd Cir.1954); *State v. CPS Chem. Co.,* 198 *N.J.Super.* 236, 243–44, 486 *A*.2d 944 (App.Div.), *appeal denied,* 105 *N.J.* 502, 523 *A*.2d 151 (1985); *Doe v. Klein,* 143 *N.J.Super.* 134, 140, 362 *A*.2d 1204 (App.Div.1976); *cf. R.* 3:6–7 (maintaining requirement of grand-jury secrecy except for disclosure to criminal defendants under *Rules* 3:13–3 and 3:17).

Although the grand jury occupies a special niche in this state's system of criminal law, it has never been accorded the "almost mythical" stature ceded to it by some courts. *State v. Murphy,* 110 *N.J.* 20, 30, 538 *A*.2d 1235 (1988). For example, in New Jersey every defendant has full and complete access to grand-jury materials. *See R.* 3:13–3(a)(3). In addition, any citizen may, on request, obtain a statement or a report from the grand jury indicating that a charge against the person was investigated and that the grand jury did not, based on the evidence presented, return an indictment. *N.J.S.A.* 2A:73B–2(a). Furthermore, a person called as a witness may obtain a statement indicating that he or she was not the target of the investigation. *N.J.S.A.* 2A:73B–2(b). In short, we have viewed grand juries as instruments of justice and have shaped their procedures to that end.

Thus, notwithstanding the long-established policy of grand-jury secrecy, disclosure is permitted in certain circumstances. Specifically, the party seeking disclosure ordinarily must establish "a strong showing of particularized need that outweighs the interest in grand jury secrecy." *Doliner, supra,* 96 *N.J.* at 246, 475 *A.*2d 552; *accord Sells, supra,* 463 *U.S.* at 443, 103 *S.Ct.* at 3147, 77 *L.Ed.*2d at 764; *Douglas Oil Co., supra,* 441 *U.S.* at 223, 99 *S.Ct.* at 3148, 60 *L.Ed.*2d at 167; *Procter & Gamble, supra,* 356 *U.S.* at 682, 78 *S.Ct.* at 986, 2 *L.Ed.*2d at 1082; *State v. Arace Bros.,* 230 *N.J.Super.* 22, 29, 552 *A.*2d 628 (App.Div.1989). Although a criminal defendant need not establish a particularized need in order to gain access to grand-jury materials, *see R.* 3:13-3(a)(3), in a civil action "[g]overnment attorneys and agencies must make the same showing as civil litigants." *Doliner, supra,* 96 *N.J.* at 246, 475 *A.*2d 552; *see also Sells, supra,* 463 *U.S.* at 444, 103 *S.Ct.* at 3148, 77 *L.Ed.*2d at 765 (particularized-need standard similarly applies to government attorneys); *Illinois v. Abbott & Assocs.,* 460 *U.S.* 557, 567–68, 103 *S.Ct.* 1356, 1361–62, 75 *L.Ed.*2d 281, 290 (1983) (same).

The United States Supreme Court noted in *Sells* that the standard for determining whether a movant has established need sufficient to outweigh the public interest in grand-jury secrecy is "a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than others." 463 *U.S.* at 445, 103 *S.Ct.* at 3149, 77 *L.Ed.*2d at 766. Although the Court did not apply a different standard to government agencies, it recognized that when the government is seeking disclosure, certain considerations may "weigh for or against disclosure in a given case." *Ibid.; accord In re Grand Jury Proceedings, Miller Brewing Co.,* 717 *F.*2d 1136, 1138 (7th Cir.1983) *(Miller Brewing Co.); Doliner, supra,* 96 *N.J.* at 251–52, 475 *A.*2d 552. The Court further observed that disclosure to government attorneys may reasonably pose "less risk of further leakage or improper use than would disclosure to

private parties or the general public." *Sells, supra,* 463 *U.S.* at 445, 103 *S.Ct.* at 3149, 77 *L.Ed.*2d at 766; *accord Miller Brewing Co., supra,* 717 *F.*2d at 1138; *Doliner, supra,* 96 *N.J.* at 251, 475 *A.*2d 552. Moreover, in *Doliner,* we observed that " 'the public interest to be served by disclosure to the government is * * * a legitimate consideration.' " 96 *N.J.* at 251, 475 *A.*2d 552 (quoting *Miller Brewing Co., supra,* 717 *F.*2d at 1138). Significantly, one factor weighing against disclosure is the agency's power to obtain discovery through its regulatory or statutory authority. *Sells, supra,* 463 *U.S.* at 445, 103 *S.Ct.* at 3149, 77 *L.Ed.*2d at 766; *Miller Brewing Co., supra,* 717 *F.*2d at 1138; *Doliner, supra,* 96 *N.J.* at 251–52, 475 *A.*2d 552; *cf. State v. CPS Chem. Co., supra,* 198 *N.J.Super.* at 244, 486 *A.*2d 944 ("availability [to civil litigant] of other routes to the discovery of relevant information is a significant consideration").

In *Doliner, supra,* 96 *N.J.* 236, 475 *A.*2d 552, we applied a balancing test in determining whether disclosure can be tolerated in special circumstances. There, the grand jury had investigated the business and affairs of four related parties and had returned indictments against three of them. One of the defendants pled guilty to six counts of Medicaid fraud. The remaining counts against that defendant and the other two defendants were dismissed. The State, on behalf of the Attorney General's Office and the Department of Human Services, then sought disclosure of business records subpoenaed by the grand jury as well as the grand-jury transcripts. The trial court granted the motion and the Appellate Division affirmed. We held that in determining whether grand-jury records should be disclosed, a court should balance the relevant factors that support disclosure in the specific case against any of those factors generally relied on to support grand-jury secrecy that it finds applicable. *Id.* at 251–52, 475 *A.*2d 552. With regard to the business records, we concluded that disclosure would not frustrate any of the purposes ordinarily served by grand-jury secrecy. *Id.* at 252–53, 475 *A.*2d 552. We also determined that in the context

of the decreased need for secrecy, the particularized-need standard was satisfied by the public interest in disclosure, the materiality of the records, and the possibility that the records would be lost. *Id.* at 253, 475 *A.*2d 552. Hence, we affirmed the judgment authorizing disclosure of the business records. *Id.* at 254, 475 *A.*2d 552. With regard to the grand-jury transcripts and exhibits, we determined that the record was inadequate to permit a balancing of the pertinent factors, and therefore remanded the matter to the trial court. *Id.* at 254–56, 475 *A.*2d 552.

In other cases, governmental agencies seeking disclosure of grand-jury materials have asserted that efficiency considerations weigh in favor of disclosure. *See, e.g., Sells, supra,* 463 *U.S.* at 431, 103 *S.Ct.* at 3141, 77 *L.Ed.*2d at 757; *Abbott & Assocs., supra,* 460 *U.S.* at 563, 103 *S.Ct.* at 1359, 75 *L.Ed.*2d at 287; *Procter & Gamble, supra,* 356 *U.S.* at 682, 78 *S.Ct.* at 986, 2 *L.Ed.*2d at 1082; *cf. United States v. John Doe, Inc. I,* 481 *U.S.* 102, 111, 107 *S.Ct.* 1656, 1662, 95 *L.Ed.*2d 94, 107 (1987) (government argued that disclosure was necessary to ensure "the fair and evenhanded administration of justice"). Observing that "[t]he civil lawyer's need is ordinarily nothing more than a matter of saving time and expense," the *Sells* Court "rejected the argument that such savings can justify a breach of grand jury secrecy." 463 *U.S.* at 431, 103 *S.Ct.* at 3141, 77 *L.Ed.*2d at 757. Subsequently, however, the Court modified its earlier position and determined that in certain circumstances a saving of time and expense may be an adequate public benefit to justify disclosure. *John Doe, Inc. I, supra,* 481 *U.S.* at 113, 107 *S.Ct.* at 1663, 95 *L.Ed.*2d at 108. Similarly, in *Doliner,* we determined that although cost and time considerations on their own do not outweigh the public interest in grand-jury secrecy, such considerations are relevant and should be weighed in balancing the competing interests at stake. 96 *N.J.* at 251, 475 *A.*2d 552.

Courts have also recognized that as the factors justifying secrecy become less significant, the burden on a party seeking

disclosure of grand-jury materials will similarly decrease. *Douglas Oil Co., supra,* 441 *U.S.* at 223, 99 *S.Ct.* at 1675, 60 *L.Ed.*2d at 167. Moreover, "[w]hen the concerns for secrecy are not implicated, the most relevant factor in the court's decision to disclose is whether or not there has been abuse of the grand jury." *Doliner, supra,* 96 *N.J.* at 249, 475 *A.*2d 552.

In *Sells,* the Supreme Court considered the potential for abuse of the grand-jury process as a factor weighing against disclosure. 463 *U.S.* at 432–34, 103 *S.Ct.* at 3142–43, 77 *L.Ed.*2d at 757–59. There, the Government contended that *Federal Rules of Criminal Procedure* 6(e) provided for automatic disclosure of grand-jury materials to all government attorneys. *Id.* at 427, 103 *S.Ct.* at 3140, 77 *L.Ed.*2d at 754. The Court noted that such disclosure could pose a "significant threat to the integrity of the grand jury itself," *id.* at 432, 103 *S.Ct.* at 3142, 77 *L.Ed.*2d at 757, by enabling government attorneys to use the grand jury as "a virtual ex parte form of discovery." *Id.* at 434, 103 *S.Ct.* at 3143, 77 *L.Ed.*2d at 758. Similarly, the issue of abuse is relevant under the particularized-need standard adopted in *Doliner.* Hence, a court presented with a motion for disclosure of grand-jury materials should consider whether grand-jury abuse is alleged, and if so, whether those allegations are substantiated. *See Doliner, supra,* 96 *N.J.* at 250, 475 *A.*2d 552. In *Doliner,* we set forth criteria a court should consider in determining whether the grand jury has been misused:

> (1) the stated purpose of the grand jury investigation; (2) whether an indictment was returned; (3) the degree of civil agency involvement in the grand jury investigation; (4) whether the agency is seeking access to evidence to which it would not be entitled under its own investigative powers; and (5) whether the grand jury investigation was instituted at the behest of the agency. [*Id.* at 250–51, 475 *A.*2d 552.]

Finally, in determining how to balance the compelling interests in this case, we must take account of the unique societal interest involved. The public interest in the conduct of elections is a paramount interest of a free society. So unique and important is the public's interest in the conduct of free elections

that even constitutional guarantees must at times yield to that paramount interest. In *Buckley v. Valeo*, 424 *U.S.* 1, 96 *S.Ct.* 612, 46 *L.Ed.*2d 659 (1976), the Supreme Court upheld the constitutionality of several disclosure provisions of the Federal Election Campaign Act of 1971 concerning elections and campaigns for federal public office. The Court stated that governmental interests may be "sufficiently important to outweigh the possibility of [first amendment] infringement. * * * The governmental interests sought to be vindicated by the disclosure requirements [of the Federal Campaign Act] are of this magnitude." *Id.* at 66, 96 *S.Ct.* at 657, 46 *L.Ed.*2d at 714–15.

As indicated by this Court in *New Jersey State Chamber of Commerce v. New Jersey Election Law Enforcement Commission, supra*, 82 *N.J.* 57, 411 *A.*2d 168, the Act vindicates similar values. The Court there found instructive the Washington Supreme Court's resolution of a conflict between first-amendment rights and the interests in disclosure:

Notwithstanding the importance of First Amendment rights, the general public has a paramount right to information which would help it "evaluat[e] the influence of money upon legislative decision-making and related functions of government"; the state's lobbying and disclosure law was designed "for the express purpose of fostering openness in * * * government * * * [and] to exhibit in the public forum the identities and pecuniary involvements of those individuals and organizations that expend funds to influence government."
[*Id.* at 73, 411 *A.*2d 168 (quoting *Fritz v. Gorton*, 83 *Wash.*2d 275, 307–09, 517 *P.*2d 911, 930–31 (1974)).]

If the Constitution may yield in some cases to society's "paramount right to information" that would help it evaluate the influence of money on the functions of government, the interest in grand-jury secrecy may, on a proper showing, yield to the public's right to know.

### III

■ Applying the *Doliner* principles to the matter before us, we first address the extent of the need for secrecy of the grand-jury materials. Because the grand jury ended its deliberations without returning any indictments, the first three of the

five reasons for secrecy, which are related to the activities of an ongoing grand-jury investigation, see *supra* at 449, 591 *A.*2d at 617, are no longer relevant. *See Doliner, supra,* 96 *N.J.* at 247, 475 *A.*2d 552. Further, because New Jersey permits a criminal defendant automatic access to grand-jury materials, see *Rule* 3:13–3(a)(3), witnesses that appear before a state grand jury are on notice that their testimony will be disclosed on request of the indicted defendant. *Doliner, supra,* 96 *N.J.* at 247, 475 *A.*2d 552; *CPS Chem. Co., supra,* 198 *N.J.Super.* at 244, 486 *A.*2d 944. Hence, the importance of the fourth factor, encouraging witness cooperation, is minimal at best. *Doliner, supra,* 96 *N.J.* at 247, 475 *A.*2d 552. However, because the grand jury here, unlike the grand jury in *Doliner,* see *supra* at 451, 591 *A.*2d at 619, returned a no-bill, we conclude that the protection of those exonerated of criminal liability from the consequences of disclosure constitutes a significant basis for preserving the secrecy of the grand-jury proceedings. *See Doliner, supra,* 96 *N.J.* at 248, 475 *A.*2d 552.

Next we consider whether ELEC has demonstrated a particularized need sufficient to outweigh respondents' interest in maintaining the confidentiality of the grand-jury materials. We recognize that ELEC serves a vital public purpose, that of protecting the integrity of New Jersey's election process. We also acknowledge ELEC's limited investigative resources and the fact that disclosure of grand-jury materials to governmental entities may pose less risk of improper use than would disclosure to private parties.

We disagree, however, with ELEC's contention that other factors satisfy its burden of demonstrating particularized need. With respect to the grand jury's recommendation that the materials be turned over to ELEC, there is no indication that the grand jury balanced ELEC's need for the materials with the interest in maintaining grand-jury secrecy. Therefore, the grand jury's recommendation is but one of the factors to be considered in the process. ELEC also relies on the expiration of the four-year retention period for campaign contribution

records. *See N.J.A.C.* 19:25–8.2(a). As respondents note, however, ELEC had obtained those records before referring the matter to the Attorney General. Thus, the possibility that a candidate subsequently may have discarded those records is of limited significance. We are unable to discern from the record, however, whether other campaign contribution records not subject to the four-year retention period are available to ELEC.

In any event, although we agree that ELEC has an obvious public purpose in securing the grand-jury materials, we are not persuaded on this record that ELEC has made a showing of particularized need sufficient to outweigh respondents' interest in secrecy. We reach that conclusion fully cognizant of the serious allegations against respondents, which the grand jury believed warranted further investigation and the possible imposition of civil penalties. Thus, the underlying public interests are in conflict. Ideally, ELEC should have access to any information demonstrating violations of the Act. In other circumstances we would consider the denial of such access to be intolerable, because it frustrates the strong public interest in preventing unlawful campaign contributions. There is, however, a countervailing public interest in the integrity of grand-jury proceedings. We resolve those conflicting interests by evaluating the governmental agency's efforts to discharge its statutory duty without the grand-jury record. See *N.J.S.A.* 19:44A–6.

 Since referring the matter to the Attorney General, ELEC has made no attempt to secure any evidence through its own discovery authority, see *N.J.S.A.* 19:44A–6(b)(9), nor has it stated with particularity which materials it seeks to obtain. In our view, an indispensable prerequisite to a governmental agency's ability to show a particularized need for grand-jury records is that agency's good-faith effort to obtain the desired evidence through its own resources and authority. If a governmental agency were permitted to obtain grand-jury records because its own staff and resources were insufficient, disclosure of such records could become a matter of course and would encourage government attorneys to misuse the grand-jury process as an

*ex parte* form of discovery. ELEC's alleged lack of resources is a matter for the Legislature and will not sustain, on its own, a showing of particularized need. However, the agency's available resources should be considered in determining whether it has made a good-faith effort to obtain the evidence it seeks. We do not foreclose ELEC from reapplying for the grand-jury materials if, after making the requisite good-faith effort to obtain the desired evidence, it remains unable to gain access to the information.

We add a few words of guidance in the event ELEC should see fit to reapply to the Law Division to obtain the grand-jury records. The purpose for which ELEC seeks the materials is not entirely clear from this record. Although the act provides for criminal penalties in connection with any knowing and intentional violation of its reporting requirements, *N.J.S.A.* 19:44A–21a and b, the grand jury has made clear that there is no criminality involved here. ELEC's goals may be as simple as regulatory reform or administrative sanctions against the campaign committees. In its letter to the Attorney General, ELEC broadly defines its mission: "to determine whether civil penalties should be sought against any person."

As noted, *supra* at 452, 591 *A.*2d at 619, in weighing the application the court should recognize that disclosure to ELEC is not disclosure to the world. "[A] court might reasonably consider that use of grand jury materials by a government attorney 'poses less risk of further leakage * * * than would disclosure to private parties or the general public.' " *State v. Arace Bros., supra,* 230 *N.J.Super.* at 36, 552 *A.*2d 628 (quoting *United States v. Sells Eng'g, Inc., supra,* 463 *U.S.* at 445, 103 *S.Ct.* at 3149, 77 *L.Ed.*2d at 766). ELEC is not a private party nor the general public. It is a governmental agency, disclosure to which creates minimal invasion of grand-jury secrecy. As these are not materials "required by law to be made, maintained or kept on file," *N.J.S.A.* 47:1A–2, disclosure would presumably not occur unless a public-enforcement action

were to be undertaken. *Loigman v. Kimmelman*, 102 *N.J.* 98, 505 *A.*2d 958 (1986).

The critical factor in any disclosure of grand-jury information is the material sought. There are obviously differing degrees of confidentiality that attach to different portions of a grand-jury record. *See McClain v. College Hosp.*, 99 *N.J.* 346, 364, 492 *A.*2d 991 (1985) (there is diminished expectation of privacy in factual materials not implicating deliberative role of agency of government). This record discloses a confidential affidavit submitted to the Court that details the materials sought.

The administrative objective of the agency can be better determined after a hearing in the event ELEC reapplies for disclosure of the grand-jury records. To the extent that the names or identities of individual witnesses or parties are irrelevant to the agency's goals, those can be redacted. Courts often tailor the release of documents to reconcile the needs of individual fairness with the public interest in the grand-jury findings. *See In re Presentment of the Essex County Grand Jury*, 110 *N.J.Super.* 24, 264 *A.*2d 253 (App.Div.1970); *R.* 3:6–9. Following a hearing, the Law Division may then condition production of the relevant materials on accommodation of significant privacy interests. *See In re Application of VV Publishing Corp.*, 120 *N.J.* 508, 577 *A.*2d 412 (1990) (redacted trial transcripts to be made available to media to balance public right to information with privacy interests involved); *State v. CPS Chem. Co.*, *supra*, 198 *N.J.Super.* at 245–46, 486 *A.*2d 944 (regarding redacting of grand-jury trial transcripts to protect secrecy).

Lastly, we note that the record contains no allegations of abuse of the grand-jury process. Respondents do not suggest that ELEC had an improper motive when it referred the matter to the Division of Criminal Justice, nor does the record indicate that ELEC was involved in the grand-jury investigation in any respect. Hence, we find no showing of grand-jury abuse.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.