NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0779-13T4

BENNETT A. BARLYN,

    Plaintiff-Respondent,

v.

PAULA T. DOW, Individually
and in her official capacity
as Attorney General of New
Jersey; STEPHEN J. TAYLOR,
Individually and in his official
capacity as Director of the New
Jersey Division of Criminal
Justice; DERMOT O' GRADY,
Individually and in his official
capacity as Acting Hunterdon County
Prosecutor; THE STATE OF NEW JERSEY;
THE OFFICE OF THE ATTORNEY GENERAL;
THE NEW JERSEY DIVISION OF CRIMINAL
JUSTICE; THE COUNTY OF HUNTERDON,

    Defendants-Appellants.

| APPROVED FOR PUBLICATION |
| :---: |
| May 7, 2014 |
| APPELLATE DIVISION |

---

Argued January 28, 2014 — Decided May 7, 2014

Before Judges Messano, Hayden and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0296-12.

Jane A. Greenfogel, Deputy Attorney General, argued the cause for appellants (John J. Hoffman, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Greenfogel and Kathryn J.H. Boardman, Deputy Attorney General, on the brief).

Robert E. Lytle argued the cause for respondent (Szaferman, Lakind, Blumstein & Blader, P.C., attorneys; Mr. Lytle, on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

Plaintiff Bennett A. Barlyn filed a two-count complaint in the Law Division, Mercer County, naming as defendants individually and in their official capacities, Paula T. Dow, who at all relevant times alleged in the complaint was Attorney General of the State of New Jersey, Stephen J. Taylor, then Director of the New Jersey Division of Criminal Justice (DCJ), and Dermot O'Grady, an Assistant Attorney General who served briefly as acting Hunterdon County Prosecutor. Also named as defendants were the State of New Jersey, the Office of the Attorney General (OAG), DCJ and the County of Hunterdon (the County).[1] The complaint alleged that plaintiff was wrongfully terminated from his position as an assistant prosecutor in the Hunterdon County Prosecutor's Office (HCPO) in violation of "clear mandates of public policy." See Pierce v. Ortho Pharm. Corp., 84 N.J. 58, 72 (1980) ("An action in tort may be based on the duty of an employer not to discharge an employee who refused

---

[1] Other than the County, we refer to the remaining defendants collectively as "defendants" throughout the balance of this opinion.

2                                          A-0779-13T4

to perform an act that is a violation of a clear mandate of public policy."). A second count alleged that the individual defendants had violated the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 (the CRA).

Plaintiff filed a motion to compel the disclosure of "[g]rand [j]ury materials" from an investigation conducted by the HCPO resulting in the indictment of then-Hunterdon County Sheriff Deborah Trout, Undersheriff Michael Russo, and Sheriff's Office investigator John Falat, Jr. Defendants filed opposition, and, after considering oral arguments, the judge granted plaintiff's motion. She entered an order requiring defendants to provide "a copy of all materials generated by the Hunterdon County [g]rand [j]ury in connection with its investigation . . . , including but not limited to transcripts, exhibits, subpoenaed documents and/or other evidence[.]"

We granted defendants' motion for leave to appeal. The Law Division judge entered a consent order staying production of the materials pending our resolution of the appeal. Having now considered the arguments made in light of the record and applicable legal standards, we reverse.

I.

We set forth in greater detail the assertions made in plaintiff's complaint, recognizing that many critical

allegations are contested by defendants. From 1994 until 2007, plaintiff served as a Deputy Attorney General in DCJ's Appellate Bureau. He was employed by the HCPO as an assistant prosecutor between 2007 and August 2010, when he was suspended from his duties and subsequently terminated.

In 2008, under the direction of then-Hunterdon County Prosecutor J. Patrick Barnes, the HCPO began an investigation into the operations of the Hunterdon County Sheriff's Office (HCSO). In his complaint, plaintiff sets forth a number of allegations regarding Trout's political connections with the administration of Governor Chris Christie, as well as her connections to Robert J. Hariri, a local business man "active in Republican politics."

Plaintiff asserts that after the gubernatorial election in 2009, HCPO staff involved in the HCSO investigation personally briefed newly-appointed Attorney General Dow about the investigation. The Hunterdon County grand jury began to hear evidence shortly thereafter. In May 2010, the grand jury returned indictments against Trout, Russo, and Falat, charging each with multiple counts of official misconduct, N.J.S.A. 2C:30-2, and other crimes. Additionally, the grand jury returned a presentment that "discussed non-criminal malfeasance

by other employees of the [HCSO] during the tenure of Trout, Russo and Falat."[2]

Plaintiff alleges that Dow directed Barnes, who was in "holdover" status, to submit his resignation effective May 7, 2010, the same date the vicinage assignment judge had previously set for the release of the indictments. Plaintiff claims Barnes told others that he was removed specifically because of the investigation into the HCSO. Dow immediately appointed O'Grady as acting Hunterdon County Prosecutor pursuant to the Criminal Justice Act, N.J.S.A. 52:17B-97 to -117. Plaintiff alleges that holdover prosecutors in other counties were permitted to remain in their positions, and supersession occurred only in Hunterdon County.

Plaintiff also claims that shortly after the indictments were unsealed, Russo, who was running for sheriff in neighboring Warren County, boasted that the governor would intercede and "'have this whole thing thrown out.'" The OAG and DCJ also took direct control of the prosecution of the indictments, as well as physical possession of all evidence from the investigation.

On August 23, 2010, Deputy Attorney General Christine A. Hoffman appeared before the Law Division judge to whom the

---

[2] The indictments are in the appellate record; the presentment is not.

indictments had been assigned. In a letter to the judge dated the same date, Hoffman wrote that the State was seeking dismissal "based upon legal and factual deficiencies in the indictments against all three defendants." She further stated that the grand jurors were given "incorrect instructions . . . which . . . tainted the entire deliberative process." As a result, "the charges contained in these indictments cannot be sustained at trial." Based upon the State's motion, the Law Division judge dismissed the indictments.

Plaintiff alleges that on the same day, he told O'Grady "dismissal of the indictments was improper, unlawful and motivated by a corrupt political purpose." Later that day, the Governor nominated Barnes' successor. The following morning, O'Grady suspended plaintiff from his duties without explanation. Plaintiff claims that O'Grady thereafter organized a "pretextual 'investigation'" of plaintiff's performance as an assistant prosecutor; on September 15, Taylor faxed a letter to plaintiff's counsel, terminating plaintiff's employment at the HCPO without explanation.

Plaintiff filed his complaint in the Mercer vicinage on February 1, 2012, and defendants filed their answer on December

28.[3]  On August 5, 2013, plaintiff moved to compel, without specification, the production of all "grand jury materials."  In a supplemental certification, plaintiff's counsel included a copy of an amended federal district court complaint filed by Trout, Russo and Falat against various HCPO personnel and County officials (the federal suit), alleging malicious prosecution and violations of the Law Against Discrimination, N.J.S.A. 10:5-1 to 49.

Before the motion judge, the parties essentially agreed that plaintiff's request implicated two issues:  1) whether the judge had the authority to consider the motion to compel, or whether such a motion needed to be directed to the assignment judge for the Somerset/Hunterdon/Warren vicinage (Vicinage 13); and 2) whether plaintiff demonstrated release of the grand jury materials was proper under the seminal case of State v. Doliner, 96 N.J. 236 (1984).

The motion judge carefully and thoroughly considered both arguments.  She concluded that she had authority to decide the motion, reasoning that once venue for plaintiff's complaint was properly laid in the Mercer vicinage, "exclusive control by the assignment judge [of Vicinage 13] [was] relinquished . . . ."

---

[3] This delay is unexplained in the record.

After considering the factors enunciated in Doliner, the judge granted plaintiff's motion and entered the order under review.

II.

Consideration of the issues presented on appeal is guided by some abiding principles. "Decisions of trial courts on discovery matters are upheld unless they constitute an abuse of discretion." In re Custodian of Records, Criminal Div. Manager, 214 N.J. 147, 162-163 (2013) (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). Therefore, "[w]e generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC Partnership, 378 N.J. Super. 68, 80 (App. Div.) (emphasis added) (citing Payton v. New Jersey Tpk. Auth., 148 N.J. 524, 559 (1997)), certif. denied, 185 N.J. 296 (2005). We accord no deference to the judge's interpretation of applicable law, which we review de novo. In re Custodian of Records, supra, 214 N.J. at 163 (citing Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995)).

It is well-settled that grand jury proceedings are generally secret. State v. Clement, 40 N.J. 139, 142 (1963); Doe v. Klein, 143 N.J. Super. 134, 140 (App. Div. 1976); and see R. 3:6-7 (providing for "secrecy of proceedings of the grand

jury" except for discovery in criminal cases). The Legislature requires every grand juror to swear under oath to "keep secret the proceedings of the grand jury." N.J.S.A. 2B:21-3. Any person who, "with the intent to injure another, purposely discloses any information concerning the proceedings of a grand jury, other than as authorized or required by law, commits a crime of the fourth degree[,]" and is subject to a civil action brought by the injured party. N.J.S.A. 2B:21-10(a) and (b).

"The grand jury's duty to uncover criminal wrongdoing and screen out charges not warranting prosecution underlies the long-standing rule safeguarding the confidentiality of its proceedings." In re Application for Disclosure of Grand Jury Testimony, 124 N.J. 443, 449 (1991) (ELEC)[4] (citation omitted); see also In re Allegations of Official Misconduct, 233 N.J. Super. 426, 430 (App. Div. 1989) ("To carry out its dual function, [the grand jury] enjoys extraordinary inquisitorial and investigative powers, and its proper functioning depends significantly upon the concept of secrecy in its proceedings."). In Doliner, supra, 96 N.J. at 247, the Court identified five public policy reasons favoring secrecy, which we discuss at greater length below.

---

[4] The applicant in that case was the Election Law Enforcement Commission (ELEC). For ease, we use this acronym hereafter when referring to the Court's opinion.

Yet, "notwithstanding the long-established policy of grand-jury secrecy, disclosure is permitted in certain circumstances." ELEC, supra, 124 N.J. at 451; see also Doe, supra, 143 N.J. Super. at 140-41 (the "secrecy of grand jury proceedings is not absolute"). The Legislature, for example, has provided that a person investigated by a grand jury returning a no bill of indictment "may request the grand jury . . . issue a statement indicating that a charge against the person was investigated and that the grand jury did not return an indictment from the evidence presented." N.J.S.A. 2B:21-9(a). A person called before a grand jury "may request the grand jury to issue a statement indicating that the person was called only as a witness in an investigation, and that the investigation did not involve a charge against the person." N.J.S.A. 2B:21-9(b). Additionally, as noted, our Rules provide for the release of a transcript of grand jury proceedings upon the request of an indicted defendant, or the prosecutor. See R. 3:6-6(b).

However, as we noted in Doe, supra, 143 N.J. Super. at 141, "[t]he rules of civil procedure do not contain a comparable provision granting litigants in civil cases access to grand jury testimony." "[T]he primary procedural distinction between discovery of grand jury proceedings under [the Rules governing post-indictment discovery in criminal cases] and under general

A-0779-13T4

legal principles lies in the showing the applicant for discovery must make." State v. CPS Chemical Co., 198 N.J. Super. 236, 243 (App. Div.), motion for leave to appeal denied without prejudice, 105 N.J. 502 (1985). In Doe, we said the applicant must "demonstrate compelling circumstances or need warranting disclosure of grand jury testimony." Doe, supra, 143 N.J. Super. at 141.

"[C]onclud[ing] . . . the principles that underlie federal and state grand jury secrecy are identical," the Court in Doliner specifically adopted the test enunciated by the United States Supreme Court. Doliner, supra, 96 N.J. at 246. The applicant seeking disclosure must make "a strong showing of particularized need that outweighs the interest in grand jury secrecy." Ibid.; see also CPS Chem., supra, 198 N.J. Super. at 243 ("Doliner makes clear that in the context of related civil litigation[,] a party may be afforded access to prior and concluded grand jury proceedings where he is able to demonstrate that his need outweighs the public interest in grand jury secrecy."). In Doliner, the Court cited with approval Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed. 2d 156 (1979). Ibid. There, the United States Supreme Court described

> the standard for determining when the
> traditional secrecy of the grand jury may be

> broken: [p]arties seeking grand jury transcripts . . . must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. Such a showing must be made even when the grand jury whose transcripts are sought has concluded its operations . . . . For in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries.
>
> [Douglas Oil Co., supra, 441 U.S. at 222, 99 S. Ct. at 1674, 60 L. Ed. 2d at 167 (emphasis added).]

"[T]he standard for determining whether a movant has established need sufficient to outweigh the public interest in grand-jury secrecy is 'a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than others.'" ELEC, supra, 124 N.J. at 451 (quoting United States v. Sells Eng'g, Inc., 463 U.S. 418, 423, 103 S. Ct. 3133, 3149, 77 L. Ed. 2d 743, 766 (1983)). In balancing a litigant's particularized need versus the public interest in grand jury secrecy, a court must "take into account the five basic reasons for secrecy," CPS Chem., supra, 198 N.J. Super. at 243, which are:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.
>
> [Doliner, supra, 96 N.J. at 247 (quoting United States v. Procter & Gamble, 356 U.S. 677, 681 n. 6, 78 S. Ct. 983, 986 n. 6, 2 L. Ed. 2d 1077, 1081 n. 6 (1958)).]

Because "the reasons for secrecy are primarily related to the work of an ongoing grand jury investigation, not the work of a grand jury that has concluded its deliberations and returned either an indictment or a no bill," the first three factors "almost invariably disappear" upon the occurrence of either of those events.  Ibid.  "The fourth factor also will ordinarily not constitute a bar to discovery since 'in New Jersey every witness is on notice that his or her testimony will be disclosed to a defendant on request.'"  CPS Chem., supra, 198 N.J. Super. at 244 (quoting Doliner, supra, 96 N.J. at 247).  Doliner's fifth factor, however, "is . . . a matter whose applicability and effect require evaluation in each instance . . . ."  Ibid.

13

"'[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification.'" Doliner, supra, 96 N.J. at 251 (quoting Douglas Oil, supra, 441 U.S. at 223, 99 S. Ct. at 1675, 60 L. Ed. 2d at 167).

Defendants concede that the first, second and third Doliner factors are inapplicable to this case. However, they argue the judge failed to fully consider the remaining two factors. The judge concluded that factor four did not preclude disclosure, essentially adopting plaintiff's argument that, because Trout, Russo and Falat no longer worked at the HCSO, anyone who provided information to the grand jury was not subject to reprisal. The judge determined that factor five was also of minimal importance because the indictment had received significant notoriety.

We recognize the Court has said that the "importance of the fourth factor, encouraging witness cooperation, is minimal at best." ELEC, supra, 124 N.J. at 456 (citing Doliner, supra, 96 N.J. at 247). That assessment is premised on the fact that "in New Jersey every witness is on notice that his or her testimony will be disclosed to a defendant upon request." Doliner, supra,

96 <u>N.J.</u> at 247.[5]   Here, plaintiff states that the indictments were dismissed before the grand jury materials were furnished to Trout, Russo and Falat.   While a grand jury witness in New Jersey may know that his testimony might be disclosed if an indictment is returned, we are not sure that grand jury witnesses are armed with an understanding that, in some circumstances, their testimony may also be disclosed even if a no bill is returned or an indictment dismissed before trial.

Defendants properly note that because of the unusual circumstances presented in this case, witnesses who provided information to the grand jury may have their identities exposed, even though they will never be called upon to testify in a criminal proceeding.   We cannot say whether they will be subject to the opprobrium of others they know or with whom they work, even though the three indicted individuals are no longer employed by the HCSO.   A court must consider the possible chilling effect this might have upon witness cooperation in future grand jury proceedings. <u>Douglas Oil Co.</u>, <u>supra</u>, 441 <u>U.S.</u> at 222-23, 99 <u>S. Ct.</u> at 1674-75, 60 <u>L. Ed.</u> 2d at 166-67.

---

[5] While we respect the Court's analysis, we are uncertain that witnesses appearing before grand juries in New Jersey either know or are told that their testimony will be provided upon request to the defendant if an indictment is returned, even if they are aware in a general sense that they may be called as witnesses if there is a trial.

A-0779-13T4

As to factor five, defendants argue that although the indictment may have received significant media attention, it was subsequently dismissed. They contend disclosure of the grand jury materials essentially exposes Trout, Russo, and Falat to further public accusations without furnishing any forum in which to vindicate their reputations, and publicly identifies witnesses and others who testified or provided information.

Plaintiff counters by arguing that the specific allegations were repeatedly discussed in open court, and that the three individuals have filed the federal suit that challenges the motives behind the investigation that led to their indictments. In other words, Trout, Russo and Falat themselves seek to shine light upon the grand jury's investigation.[6]

In <u>Doliner</u>, the Court concluded that under the specific facts presented, the fifth factor "ha[d] little application . . . since the indictment of all the defendants . . . moot[ed] that issue . . . ." 96 <u>N.J.</u> at 253. Of course in <u>Doliner</u>, it

_____

[6] Well after this appeal was argued and immediately prior to the filing of our opinion, plaintiff forwarded correspondence demonstrating that all parties to the federal suit have sought release of the grand jury materials. Trout, Russo and Falat served a document production request upon an HCPO detective who is a named defendant in the federal complaint. Likewise, the defendants in the federal complaint have served a subpoena duces tecum upon the OAG. Apparently, the defendants and OAG have "postpone[d] the return date of the" subpoena pending the issuance of our opinion.

was the defendants, most of whom had pled guilty, who opposed release.  Factually, this case falls somewhere between <u>Doliner</u> and <u>ELEC</u>, where the grand jury did not return any indictment against the defendants.  <u>ELEC</u>, <u>supra</u>, 124 <u>N.J.</u> at 447.  In those circumstances, the Court "conclude[d] that the protection of <u>those exonerated of criminal liability from the consequences of disclosure constitutes a significant basis for preserving the secrecy of the grand-jury proceedings</u>."  <u>Id.</u> at 456 (emphasis added).

When the motion was argued in this case, it was unclear whether factor five militated for or against disclosure.  In our minds, the mere fact that the indictments produced much publicity would be insufficient to compel disclosure.  However, we agree that it would be significant to consideration of factor five if, as plaintiff now claims, Trout, Russo and Falat have sought release of the material, or if the grand jury materials are released to them in conjunction with the federal suit.

In any event, our decision rests upon reasons other than consideration of <u>Doliner</u> factors four and five.  Should plaintiff make a future application for disclosure, the judge will carefully consider those factors based upon the record that then exists.

In our opinion, plaintiff has failed to demonstrate "a strong showing of particularized need that outweighs the interest in grand jury secrecy." Doliner, supra, 96 N.J. at 246 (emphasis added). At oral argument before the motion judge, plaintiff contended that to properly prosecute his suit, he needed to demonstrate that the legal and factual deficiencies cited by Hoffman when she sought dismissal of the indictments "did not exist." He further argued that these alleged deficiencies could only be rebutted if he had "access to the same materials that were considered when the State decided to dismiss the three indictments." Plaintiff contended that the "non-existent [Doliner] secrecy factors are clearly outweighed by the relevance of the materials . . . from the grand jury."

In addressing the issue of "particularized need," the judge considered the elements of plaintiff's cause of action under Pierce. She found that the grand jury materials would be "relevant" to support plaintiff's claim that his termination was based upon "well-founded" complaints of corruption, and to challenge Hoffman's statement that the indictments were deficient. She further noted that evidence supporting such a claim typically was circumstantial.

"[P]articularized need is best evaluated by examining the character of the materials sought to be disclosed." Doliner,

_supra_, 96 _N.J._ at 248.  "The critical factor in any disclosure of grand-jury information is the material sought[,]" since "[t]here are obviously differing degrees of confidentiality that attach to different portions of a grand-jury record."  _ELEC_, _supra_, 124 _N.J._ at 459.  Here, plaintiff made no request for particular aspects of the grand jury's investigation or proceedings.  He demanded, and the judge ordered, the release of "all materials generated by the . . . Grand Jury in connection with its investigation . . . , including but not limited to transcripts, exhibits, subpoenaed documents and/or other evidence[.]"

Particularized need also requires that one seeking release of grand jury material demonstrate more than the probable relevance of the material to the litigation.  _See, e.g._, _Sells Eng'g_, _supra_, 463 _U.S._ at 445, 103 _S. Ct._ at 3149, 77 _L. Ed._ 2d at 766 (reversing the lower court's finding of particularized need for disclosure because "its explanation . . . amounted to little more than its statement that the grand jury materials sought [were] rationally related" to the government's civil fraud suit).  In _Doe_, we recognized that a "'compelling necessity'" must be shown with "'particularity'"; a showing of the material's "'relevancy and usefulness'" would "fall short of proof that" the plaintiffs would suffer prejudice or "'an

injustice would be done'" without it.  Doe, supra, 143 N.J. at 142 (quoting Procter & Gamble Co., supra, 356 U.S. at 681, 78 S. Ct. at 986, 2 L. Ed. 2d at 1081-1082).

We have also said that "[w]hile application of the test of need presents a more difficult and individualized problem, it is at least clear that the availability of other routes to the discovery of relevant information is a significant consideration."  CPS, supra, 198 N.J. Super. at 244.  We further explained

> A party to a civil proceeding ordinarily has available to him the whole panorama of discovery techniques provided for by the rules of court.  He may find it more time-consuming or expensive or difficult to obtain information by pursuing those routes than by reviewing relevant grand jury proceedings, but in any event maintenance of grand jury secrecy in those circumstances will not ordinarily result in an adverse impact upon him for which he cannot compensate.
>
> [Ibid.]

In Doe, we echoed similar concerns, noting that "the furnishing of the transcripts of the grand jury testimony might save substantial time and expense, nevertheless, this alone does not warrant the lifting of the veil of secrecy accorded grand jury proceedings."  Doe, supra, 143 N.J. Super. at 143.

The Court has expressed similar concerns in very different circumstances.  In ELEC, the Commission sought release of State

20

grand jury materials that led to a presentment but no indictment of the defendants. ELEC, supra, 124 N.J. at 447. "[A]lthough [the Court] agree[d] that ELEC has an obvious public purpose in securing the grand-jury materials," it "was not persuaded . . . that ELEC . . . made a showing of particularized need sufficient to outweigh respondents' interest in secrecy." Id. at 457. The Court noted that ELEC had made "no attempt to secure any evidence through its own discovery authority . . . , nor ha[d] it stated with particularity which materials it s[ought] to obtain." Ibid. The Court held that "an indispensable prerequisite to a governmental agency's ability to show a particularized need for grand-jury records is that agency's good-faith effort to obtain the desired evidence through its own resources and authority." Ibid.

On the other hand, we found the requisite showing of particularized need in Caiazza v. Bally Mfg., 210 N.J. Super. 7 (App. Div. 1985). There, we considered the issue in the context of the plaintiffs' wrongful death claims occasioned by a fatal fire at Great Adventure Amusement Park in Jackson Township. Id. at 10. Noting that the "building itself ha[d] been destroyed, and the nearly contemporaneous records and testimony gathered by the grand jury constitute[d] the best and perhaps only way to reconstruct the critical events," we concluded that the

plaintiffs had established a particularized need for the materials. Ibid. (emphasis added).

In this case, we acknowledge without serious debate the potential relevancy of the grand jury material, or the likelihood that it may lead "to the discovery of admissible evidence[.]" See R. 4:10-2. The issue was amply discussed before the motion judge and during oral argument before us. To the extent defendants argue otherwise, we reject their contentions. As noted, however, mere relevancy is insufficient to compel disclosure, even if the Doliner factors weigh heavily against secrecy concerns.

We were advised at oral argument that at the time the order was entered, there had been little discovery exchanged. Plaintiff's complaint includes the names of several individuals, other than defendants and Hoffman, who he claims have knowledge of the investigation of the HCSO and the factual and legal sufficiency of the indictments returned. These named individuals allegedly have information that directly and circumstantially supports plaintiff's allegation that dismissal of the indictments was politically-motivated. Such information would permit an inference that plaintiff had a reasonable basis for making his complaint to O'Grady in the first instance, and that his termination was unrelated to his job performance. Yet,

the record is devoid of any indication that plaintiff attempted to obtain from these persons, or that these individuals refused to supply, relevant information.

There is also nothing in the record that demonstrates plaintiff attempted to obtain the contents of the HCPO file of the investigation through discovery. We express no opinion whether plaintiff would be entitled to compel the release of some or all of the file. See, e.g., River Edge Sav. & Loan Assoc. v. Hyland, 165 N.J. Super. 540, 543-44 (App. Div.) (noting that criminal investigative materials held by the State are generally privileged from disclosure, but that the "privilege is not absolute"), certif. denied, 81 N.J. 58 (1979). We raise the issue only in the context of plaintiff's failure to demonstrate a "particularized need" specifically for the grand jury materials. [7]

In sum, we reverse the order under review. We do so without prejudice to plaintiff's ability to make application to the Law Division if, on the record then-existing, he can demonstrate a particularized need for some or all of the grand jury materials. See ELEC, supra, 124 N.J. at 458 (permitting

---

[7] We hasten to add that our conclusion in this regard is strictly limited to plaintiff's request and the order under review. Our opinion should not be construed as expressing any particular position on the requests pending in the federal suit noted in footnote six, supra.

possible re-application "if, after making the requisite good-faith effort to obtain the desired evidence, [applicant] remains unable to gain access to the information"). In the event plaintiff again seeks to compel production of grand jury material, the "trial judge shall review in camera each item that [plaintiff] seek[s] to have released for discovery purposes to make certain that [plaintiff's] needs outweigh the public interest in grand jury secrecy." State v. CPS Chem., 105 N.J. 502, 502 (1985).

### III.

Defendants argued in the Law Division and before us that the motion judge lacked "jurisdiction" to consider plaintiff's motion because only the assignment judge for Vicinage 13, or her designee, may order release of the grand jury materials at issue. Plaintiff contends that no statute, Court Rule or case law supports this proposition. With certain exceptions discussed below, we agree with plaintiff.

No statute or Court Rule directly addresses the issue, although those authorities clearly demonstrate the assignment judge's pervasive control of county grand juries in New Jersey. "The [a]ssignment [j]udge for each county shall impanel one or more grand juries for that county, as the public interest requires." N.J.S.A. 2B:21-1; see also R. 3:6-1 (same). The

assignment judge, or her designee, conducts the voir dire of prospective panel members, hears and decides requests for excusal or deferral, rules on objections by the prosecutor to prospective jurors based upon partiality or lack of qualifications to serve and fills vacancies among the jury as they occur. N.J.S.A. 2B:21-2(b), (c) and (d); N.J.S.A. 2B:21-4; see also R. 3:6-3(a) (requiring the assignment judge to determine whether bias or interest exists and justifies excusal), but see R. 3:6-2 (challenges to the array of grand jurors or objections to individual grand jurors' qualifications shall be heard by a judge designated by the assignment judge). The assignment judge selects the foreperson and deputy foreperson of the grand jury. R. 3:6-4.

Indictments are "returned in open court to the [a]ssignment [j]udge or, in the [a]ssignment [j]udge's absence, to any Superior Court judge assigned to the Law Division in the county." R. 3:6-8(a). The assignment judge must receive grand jury presentments and is responsible for examining any presentment, conducting a hearing and ruling on any objections, and releasing the presentment to the public. R. 3:6-9 (b), (c) and (d). The assignment judge discharges the grand jury, or may order its continuance. R. 3:6-10.

A-0779-13T4

Only one of our Court Rules explicitly addresses the assignment judge's role in the release of confidential grand jury records. Pursuant to Rule 3:6-5, "[t]he record of the vote on every count of every indictment and on every presentment shall be filed with the clerk of the grand jury[,]" and "shall not be made public except on order of the [a]ssignment [j]udge."

Typically, when a plaintiff in a civil suit seeks disclosure, venue for the litigation has been laid in the same vicinage where the grand jury was empaneled. We agree with defendants that motions seeking disclosure in those circumstances should be addressed, in the first instance, to the vicinage assignment judge. See, e.g., Grill v. City of Newark, 311 N.J. Super. 149 (Law Div. 1997); Stewart v. Dexter, 218 N.J. Super. 417 (Law Div. 1987). However, in this case, Vicinage 13, which includes Hunterdon County where the grand jury was empaneled, is not where plaintiff's suit is venued.

Defendants seemingly contend this distinction does not matter. They rely upon case law involving indictments returned by the State grand jury, which is subject to an entirely distinct statutory scheme. See N.J.S.A. 2B:22-1 to -9; R. 3:6-11. The assignment judge who oversees the State grand jury has broad powers, including the ability to designate the county of venue for any indictment returned by the panel, and to

consolidate indictments returned by the State grand jury with those returned by a county grand jury, and fix the venue for trial of both. R. 3:14-1(k); N.J.S.A. 2B:22-7.

In such circumstances, it matters little where venue is laid for the civil action because the State grand jury assignment judge, having exercised his or her ability to set venue for the criminal case anywhere in the State, should logically address issues of disclosure. In other words, seeking disclosure of State grand jury materials is more akin to situations where the indictment and the civil action are venued in the same county than it would be to the circumstances presented here. The pervasive statutory and procedural scheme that applies to the State grand jury simply does not apply to this case, where the indictments were returned by a county grand jury in one vicinage, and venue for plaintiff's suit happens to be in a different vicinage.

Putting those distinctions aside, we do not find the cases cited by defendants to be persuasive. In CPS Chem., supra, 198 N.J. Super. at 245, for example, which involved State grand jury proceedings, we held that after the Mercer vicinage assignment judge who oversaw the State grand jury designated venue for an indictment in the Middlesex County vicinage, "all further proceedings in the cause, including discovery, [were] within the

control of the trial judge." In denying without prejudice the State's motion for leave to appeal, the Court permitted the State to apply before the assignment judge in the Mercer vicinage for further relief. CPS Chem., supra, 105 N.J. at 502. However, the Court explicitly provided that such further relief "includ[ed] reference of the matter back to the trial judge who originally heard the underlying application . . . [and who] shall review in camera each item that defendants seek to have released for discovery purposes to make certain that defendants' needs outweigh the public interest in grand jury secrecy." Ibid. In our view, CPS Chem. does not support defendants' position that the judge in this case could not consider plaintiff's motion to compel disclosure.

Caiazza involved disclosure of materials produced before the Ocean County grand jury and transcripts of those proceedings. Caiazza, supra, 210 N.J. Super. at 11. A number of wrongful death civil suits were consolidated before a single judge and venued in Passaic County. Ibid. That judge considered the plaintiffs' motion to compel disclosure and ordered the civil defendants, who already had the material through discovery in the criminal case, to produce it for plaintiffs. Ibid. However, he referred that part of the

motion seeking access to the grand jury testimony to the Ocean County assignment judge. Ibid.

"[A]t the same time [the civil] defendants commenced a declaratory judgment action, whose venue was laid in Ocean County, by which they sought to prevent disclosure. They were joined by [nineteen] witnesses who had testified before the grand jury and who also sought to maintain secrecy." Ibid. The Ocean County assignment judge consolidated all the pending matters, dismissed the defendant's declaratory judgment action and compelled disclosure of the transcripts. Id. at 12.

Defendants contend that Caiazza supports their position that only the assignment judge who oversaw the county grand jury can entertain a motion to compel production of grand jury material. We must disagree. Although it is unclear whether the precise issue was raised by the civil defendants and the grand jury witnesses who appealed, we specifically "affirm[ed] both orders substantially for the reasons stated by the respective trial judges, both of whom properly exercised their respective discretion in applying the test for disclosure prescribed by [Doliner.]" Ibid. (emphasis added). We also remanded the matter for entry of a protective order, not to the Ocean County assignment judge, but rather to the Passaic County trial judge. Id. at 13.

In short, we find no authority that necessarily prohibits the judge to whom the civil litigation is assigned from considering a motion seeking to compel disclosure of county grand jury material, irrespective of whether the county grand jury was empaneled in the same or a different vicinage. This is not to say, however, that in certain exceptional situations, a party opposing disclosure may seek to transfer consideration of the motion to the vicinage where the grand jury was empaneled, and the motion judge may decide that transfer is appropriate.

For example, there may be circumstances that arose during the term of the particular grand jury that are known only to the prosecutor and the assignment judge of the vicinage where the grand jury was empaneled. The assignment judge, for example, may have considered and ruled upon a particular witness's assertion of a privilege. See, e.g., In re Essex Cnty. Grand Jury Inv., 368 N.J. Super. 269, 277-78 (Law Div. 2003). If an indictment were returned, the defendant might be privy to these events through criminal discovery. But, if no indictment were returned or, as here, where the indictments were dismissed before discovery was produced, such an event might heighten secrecy concerns.

One way to properly address those issues if they exist is for the party seeking disclosure to serve notice of the motion

A-0779-13T4

on the county prosecutor's office that actually presented evidence before the grand jury at issue, something that is routinely done when venue for the civil suit and the county of grand jury empanelment are the same. That was not done in this case. Plaintiff only served his motion on defendants, not the HCPO.[8]

If a party can present specific reasons before the motion judge establishing good cause why the vicinage assignment judge in another county should hear the motion, then the motion should be transferred. Using this case as an example, if, upon notice, the HCPO demonstrates good cause why the motion should only be considered by the assignment judge in Vicinage 13 or her designee, then the Mercer Law Division judge should seek to transfer consideration of the motion to her.[9]

In this particular case, we understand that defendants' supersession of the prosecution of the indictments may have effectively neutered any meaningful participation by the HCPO,

---

[8] It would appear that plaintiff did not even serve his notice of motion upon the County, which was a defendant in the civil litigation and clearly had the right to participate before the Law Division judge.

[9] Rule 4:3-3(a) provides that only the assignment judge of the vicinage or her designee can order a change of venue. While consideration of the motion to compel need not require a complete change of venue for the litigation, it would be better practice for the assignment judge of the transferring vicinage or her designee to order transfer of the motion to another vicinage.

but we cannot be certain. We do not believe that alone should alter the procedure we set out above in the event plaintiff again seeks to compel disclosure of the grand jury material and transcripts. Defendants are also free, since they have knowledge of all the grand jury material and transcripts, to raise such particularized concerns in camera with the motion judge.

If plaintiff makes another motion to compel, it is incumbent upon the motion judge, whoever it may be, to conduct an in camera review of the grand jury material sought by plaintiff <u>before</u> ordering its production. <u>CPS Chem.</u>, <u>supra</u>, 105 <u>N.J.</u> at 502. If the grand jury material has in fact never been released, as is alleged here, the judge's in camera review may trigger the need to provide notice to witnesses who appeared before the grand jury, but whose identities have never been made public.

In <u>Caiazza</u>, several of the nineteen grand jury witnesses who opposed disclosure had already testified at the defendant's criminal trial, and their grand jury testimony was referenced during that trial. <u>Caiazza</u>, <u>supra</u>, 210 <u>N.J. Super.</u> at 11. Although we ordered disclosure because the plaintiffs' particularized need outweighed secrecy concerns, we nevertheless found "some merit in [the] claim respecting the need to protect from public opprobrium those witnesses who testified before the

grand jury whose identity has not yet been publicly disclosed." Id. at 13. "[T]hese witnesses [were] entitled to privacy to the maximum extent consistent with plaintiffs' discovery and trial needs." Ibid. We remanded the matter to the trial court "for . . . entry of an appropriate protective order respecting disclosure of the grand jury transcripts which shall be equally applicable to all of the parties in the civil litigation." Ibid.

Such a protective order might be appropriate in this case, but we cannot say at this juncture. Obviously, plaintiff may not know the identity of those witnesses, and therefore cannot be charged with the obligation to provide notice. However, the county prosecutor would know and be in a position to supply the motion judge with the identity of the witnesses so they may be notified.[10] The judge could conduct a hearing, in camera, to consider any particular witnesses' objection and fashion an appropriate protective order as necessary.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10] Because of the unusual circumstances as explained, supra, defendants might be appropriately charged with the obligation to provide notice in this case.

A-0779-13T4