**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2573-23

AMADOR CASTRO,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
COUNTY OF PASSAIC, PASSAIC
COUNTY ROAD DEPARTMENT,
CITY OF PASSAIC, CITY OF
PASSAIC PUBLIC WORKS, and
CONGREGATION TIFERETH
ISRAEL,

    Defendants-Respondents.

_____

          Argued November 6, 2024 – Decided December 11, 2024

          Before Judges Sumners and Bergman.

          On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-3621-21.

          Antonio S. Grillo argued the cause for appellant (Jacoby & Meyers, LLP, attorneys; Samantha R. Salzone, on the briefs).

Joseph P. Horan, II argued the cause for respondents City of Passaic and City of Passaic Public Works (PRB Attorneys at Law, LLC, attorneys; Peter P. Perla, Jr., of counsel and on the brief; Joseph P. Horan, II, on the brief).

PER CURIAM

On leave granted, plaintiff Amador Castro appeals the Law Division's orders granting summary judgment to defendants City of Passaic and City of Passaic Public Works, improperly pled, (collectively, the City or Passaic) dismissing with prejudice Castro's New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3, complaint; denying Castro's motion to reopen and extend discovery; and denying Castro's summary judgment reconsideration motion. In light of the parties' arguments, the record, and applicable legal standards, we affirm.

I.

A. The Accident

On a windy November 2, 2020, Castro was sitting in the driver's seat of his car parked in front of 165 Passaic Ave. when a tree—situated at 168 Passaic Ave. in front of Congregation Tifereth Israel[1]—tragically fell and collapsed on

---

[1] Castro's motion to reopen discovery and merits brief states the address was changed to 180 Passaic Ave.

his car. The tree was owned and maintained by Passaic. After law enforcement and fire department personnel extricated Castro from his car, emergency medical services took him to the hospital. Later that day, Passaic County Department of Public Works (DPW) employees removed and discarded the tree. As a result of the accident, Castro suffered a spinal injury, making him quadriplegic and in need of consistent aid and skilled care for his daily living and rehabilitation.

B. The Lawsuit and Motion Practice

A year later, Castro sued Passaic, State of New Jersey, County of Passaic, Passaic County Road Department, and Congregation Tifereth Israel, the owner of the property abutting the sidewalk where the tree fell.[2] As to Passaic, Castro alleged it was liable for his injuries under the TCA.

The case was designated a Track 2 matter with a 300-day discovery period, but discovery was extended for a total of 665 days due to five extensions. Following discovery and after an arbitrator found "no cause for action", Passaic filed a summary judgment motion, claiming immunity under the TCA. Castro opposed and cross-moved to reopen and extend discovery.

---

[2] When Castro filed this appeal, only his claims against the Congregation Tifereth Israel remained.

The motion court entered an order and statement of reasons granting Passaic summary judgment. The court analyzed Castro's two theories of liability. First, the court decided Castro did not establish Passaic had actual or constructive notice of the tree's dangerous condition. The court dismissed Castro's expert opinion that the City was liable because it had notice of the dangerous condition given "the tree failed as a result of structural degradation and lack of anchorage from the roots severed during the installation of three sidewalk blocks." The court reasoned "June and September 2019 Google images of the tree depicts a healthy tree. . . . While there was decay inside the tree, that was not apparent from the tree's outward appearance." The court also dismissed Castro's assertion that Passaic employees created the dangerous condition by replacing the sidewalk next to the tree prior to the accident—and inferentially shaving its roots—holding "[a]ny inspection that occurred would have been related to the sidewalk, [which was the responsibility of Congregation Tifereth Israel], not the tree." Secondly, the court determined "it is not palpably unreasonable for [Passaic] to rely upon others to notify them of any dangerous conditions created by their trees" and based on the TCA it "is not in the position to question how [Passaic] allocate[s] their employees."

A-2573-23

The motion court later denied Castro's motion seeking reconsideration of summary judgment. In its statement of reasons, the court, applying the reconsideration standards in D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990), explained that it considered all evidence offered by Castro in denying summary judgment and reiterated its reasons for finding that he had not overcome Passaic's sovereign immunity under the TCA to impose liability on Passaic. The court added that it's decision turned on the City's lack of actual or constructive notice of the decaying tree because Castro "offered no evidence or explanation of how [the City] caused the dangerous condition [by cutting the tree's roots], other than a blanket claim that a tree's roots are cut when a sidewalk is repaired" and the undisputed record showed "[the DPW] does not do sidewalk repair."

While Castro's reconsideration motion was pending, the court denied his motion to reopen and extend discovery.[3] Castro contended he needed more time to pursue additional depositions, expert reports, and other evidentiary material relating to the construction of the sidewalk abutting the tree. He claimed the parties agreed to continue discovery, and he needed to investigate the

---

[3] The Congregation Tifereth Israel opposed the motion but as noted had not filed a merits brief in this appeal.

Congregation Tifereth Israel's address change from 168 Passaic Ave to 180 Passaic Ave prior to the accident. Passaic and the Congregation Tifereth Israel opposed the motion, but only Passaic opposed Castro's appeal of the order denying his motion.

Applying Rule 4:24-1, the court found Castro failed to show exceptional circumstances warranting the reopening and extending of discovery. The court emphasized that the parties had sufficient time considering the 665 days of discovery due to the five extensions, and they conducted depositions after discovery had ended. The court also noted summary judgment had already been entered in favor of Passaic, and the remaining parties were free to voluntarily conduct discovery prior to trial. The court refused to enforce Castro's contention that the parties agreed "to continue discovery after . . . discovery end[ed] . . . , non-binding arbitration [was held], and . . . [s]ummary [j]udgment" was granted.

II.

A. Appeal of Summary Judgment Order

Castro challenges summary judgment arguing Passaic owned and maintained the tree, which its employees failed to remove when it decayed due to its "roots being shaved during the installation of the new sidewalk." He contends the motion court overlooked this fact, and erroneously: focused only

6

on whether the City had actual or constructive notice of the decaying tree under N.J.S.A. 59:4-2(b); and determined the City did not have actual or constructive notice despite the "apparent, open and obvious nature" that the tree "root . . . raised the sidewalk." He asserts Passaic created the dangerous condition, thus making it liable for his injuries under N.J.S.A. 59:4-2(a). Castro stresses the DPW's director deposed that upon seeing a photo of the tree leaning towards the street with its main root raising the sidewalk: "I would have [taken] the whole tree down before they did the sidewalk." Castro contends Passaic was on constructive notice when the sidewalk was raised, stating "[i]f inspections were being made at the . . . site and tree roots were being shaved, constructive notice would be justly imposed or at a minimum made a question of fact." Lastly, Castro argues Passaic's conduct was "palpably unreasonable," given it "had notice of the dangerous condition, [and did] not [] take any action in accordance with its protocol" nor "allocate[] funds to correct the dangerous condition."

B. TCA Liability

Public entities are presumptively "immune from tort liability unless there is a specific statutory provision imposing liability." Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002). "Under the TCA, immunity [for tort liability] is the rule and liability is the exception." Posey v. Bordentown Sewerage Auth.,

171 N.J. 172, 181 (2002).  Thus, "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission."  Polzo v. Cnty. of Essex, 209 N.J. 51, 65 (2012) (quoting Kahrar, 171 N.J. at 10); see also N.J.S.A. 59:2-1(a) ("Except as otherwise provided by [the TCA], a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity . . . .").

The TCA allows claims against public entities for injuries caused by conditions of their property, but only based on limited circumstances.  Under N.J.S.A. 59:4-2, a public entity has tort liability for injuries caused by the entity's property only where it is established:  (1) the public entity's "property was in dangerous condition at the time of the injury"; (2) "the injury was proximately caused by the dangerous condition"; (3) "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition" or "a public entity had actual or constructive notice of the dangerous condition."  See also Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 124-25 (2001).  A public entity is not liable for a dangerous condition of its property "if the action the entity took to

8

protect against the condition or the failure to take such action was not palpably unreasonable."  N.J.S.A. 59:4-2.

A plaintiff asserting a tort claim against a public entity for injuries allegedly caused by a condition on its property must present evidence satisfying each of the elements of a cause of action under N.J.S.A. 59:4-2.  Polzo, 209 N.J. at 66; see also Carroll v. N.J. Transit, 366 N.J. Super. 380, 386 (App. Div. 2004) (explaining N.J.S.A. 59:4-2 "places the burden squarely on the plaintiff to prove each of its elements").  A failure to present sufficient evidence proving any element of a cause of action under N.J.S.A. 59:4-2 requires dismissal of the claim.  Polzo, 209 N.J. at 66.

Based upon our de novo review of the motion court's grant of summary judgment, Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021), we conclude there are no genuine issues of material fact and that as a matter of law Passaic is entitled to summary judgment dismissal of Castro's complaint.  See R. 4:46-2(c).

C.  Dangerous Condition

We first address Castro's claim that Passaic created the tree's dangerous condition by shaving its roots to replace the sidewalk that had uplifted due to the tree's roots.  The TCA defines a "dangerous condition" as "a condition of

9

property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a).

There is no dispute that the tree collapsed because it was decaying. Yet, despite reviewing the facts in the light most favorable to Castro, the non-moving party, Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023), there is no proof that Passaic installed a new sidewalk or shaved the tree roots. While the City had issued a violation to the Congregation Tifereth Israel to repair the sidewalk on January 11, 2018, the record does not indicate the City repaired the sidewalk or shaved the tree roots to level the sidewalk. The DPW supervisor deposed that the City's involvement with sidewalk repairs was limited "to assess[ing] if a tree's roots could be shaved and the tree salvaged or if the tree needed to be removed." The supervisor noted further that the DPW's remediation effort would only involve "the spider roots [with] . . . minimal shaving, and the main structured roots would not be disturbed." Castro did not dispute this testimony. Although his expert opined that the tree roots were severed when the sidewalk was repaired, there is no evidence that the City cut the roots. Moreover, there is no evidence the roots were in fact severed. The tree was removed shortly after the accident and Castro offered no proof the roots had previously been cut.

The record—even affording all inferences to Castro—does not substantiate the assertion that Passaic created a dangerous condition. Any assertions that Passaic "created" the condition by failing to adequately inspect the subject tree is unavailing and refuted by Supreme Court precedent. As articulated in <u>Polzo</u>, an arguably "inadequate" or "flawed" inspection effort by the DPW cannot be said to have "created" the tree's dangerous condition. <u>Polzo</u>, 209 N.J. at 66-67. Moreover, the record more strongly indicates that, like in <u>Polzo</u>, natural causes created the weakened tree, as evidenced by the DPW supervisor's observation following the accident that the tree "was uprooted" because "the wind was blowing hard enough for [it] to come down." This possibility is further bolstered by both parties' concession that during the time of the incident it was windy, ranging from 35 to 40 miles per hour.

D. Actual or Constructive Notice

Even though we conclude Passaic did not cause the tree's dangerous condition, we must still address Castro's argument that Passaic had actual or constructive notice of the dangerous condition. Constructive notice of a dangerous condition by a public entity under N.J.S.A. 59:4-2 occurs "only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care,

11

should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b).

We reject Castro's contention that Passaic had actual or constructive notice of the tree's dangerous condition that caused his accident. He offers no evidence to undermine the motion court's sound reasoning that "[w]hile there was decay inside the tree, [it] was not apparent from the tree's outward appearance." Castro relies solely on photos showing the tree leaning towards the street. However, there is no outward sign that the tree was decaying, e.g., rotting bark, dying or leave-less branches. See, e.g., Chatman v. Hall, 128 N.J. 394, 418 (1992) (finding the size of a pothole can indicate it existed long enough that a public entity may have had constructive notice of its existence); Lodato v. Evesham Twp., 388 N.J. Super. 501, 504-05, 512 (App. Div. 2006) (holding whether the defendant township had constructive notice was a question for a jury when the pedestrian plaintiff tripped and fell due to a defect on a sidewalk which had been in existence for at least eighteen years); Milacci v. Mato Realty Co., Inc., 217 N.J. Super. 297, 302-03 (App. Div. 1987) (finding a large accumulation of dirt and sand on an office floor can show that a public entity may have had constructive notice of its existence). Significantly, Castro does not point to any prior complaints or incidents concerning the tree's dangerous

condition. See, e.g., Wymbs v. Twp. of Wayne, 163 N.J. 523, 536 (2000) (holding prior accidents at the same location of the dangerous condition can create an issue of fact as to constructive notice). Thus, Passaic is entitled to summary judgment.

E. Palpably Unreasonable Conduct

Given our conclusion that Passaic did not have actual or constructive notice of the dangerous condition causing Castro's accident, its failure to remove the tree cannot be viewed as palpably unreasonable under the TCA. "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). It therefore follows, absent actual or constructive notice, the public entity cannot have acted in a palpably unreasonable manner. See Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002).

Yet, even if we conclude Passaic had actual or constructive notice of the dangerous condition, Castro has not presented any facts showing Passaic's conduct was palpably unreasonable. Apart from proof of notice, to establish liability against a public entity under N.J.S.A. 59:4-2, a claimant must establish a prima facie case that the action or inaction of the public entity was "palpably

13

unreasonable." Coyne v. N.J. Dep't of Transp., 182 N.J. 481, 493 (2005); Maslo, 346 N.J. Super. at 349. Similarly, N.J.S.A. 59:2-3(d) provides:

> A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines whether and how to utilize or apply existing resources, including those allocated for equipment, facilities and personnel unless a court concludes that the determination of the public entity was palpably unreasonable.

"[The] subsection incorporates the thesis that once resources have been provided a public entity may be liable for its determination of priorities in the application of such resources if that determination is palpably unreasonable." Margolis & Novack, Claims Against Public Entities, 1972 Task Force Comment on N.J.S.A. 59:2-3(d) (2020). "Broadly speaking [N.J.S.A.] 59:2-3 provides that there shall be no liability for the decision-making process of public entities." Margolis & Novack, cmt. 1 on N.J.S.A. 59:2-3.

Palpable unreasonableness implies "behavior that is patently unacceptable under any given circumstance." Polzo 209 N.J. at 75 (internal quotations and citations omitted). "When a public entity acts in a palpably unreasonable manner, it should be 'obvious that no prudent person would approve of its course of action or inaction.'" Id. at 76 (quoting Muhammad v. N.J. Transit, 176 N.J. 185, 195-96 (2003)). Said differently, palpably unreasonable conduct "implies a more

14

obvious and manifest breach of duty" than negligence, "and imposes a more onerous burden on the plaintiff." Williams v. Phillipsburg, 171 N.J. Super. 278, 286 (App. Div. 1979).

Whether the public entity's behavior was palpably unreasonable is generally a question of fact for the jury. See Vincitore, 169 N.J. at 130. However, a determination of palpable unreasonableness, "like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented." Maslo, 346 N.J. Super. at 351 (quoting Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993)). So, "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases." Id. at 350 (citing Garrison v. Twp. of Middletown, 154 N.J. 282, 311 (1998)).

The record in this case convinces us, as a matter of law, Passaic's failure to cut down the tree was not palpably unreasonable. Castro asserts Passaic did "not to take any action in accordance with its protocol [nor] allocate[] funds to correct the dangerous condition." However, Castro has not satisfied his burden that Passaic is legally compelled to allocate its limited funds to cut down the tree, such that it was "obvious that no prudent person would approve [the public entity's] course of action or inaction." Polzo, 196 N.J. at 76 (emphasis added)

15

(quoting Muhammad, 176 N.J. at 195-96). Given public entities' limited resources, it is not within our power to impose a more comprehensive tree removal program on Passaic. See Polzo, 209 N.J. at 69. As noted, there was no reported concern of the tree's decay. There was no proof Passaic's inspection of trees was unreasonable. Under these circumstances, no rational factfinder could find it was palpably unreasonable for Passaic not to remove the tree that caused Castro's tragic injury.

## III.

### Denial of Motion to Reopen and Extend Discovery

Castro contends he proved exceptional circumstances under Rule 4:24-1 to reopen and extend discovery. He claims the motion is directly related to Passaic's summary judgment motion "because [the] . . . tree was located at 180 Passaic Avenue, . . . [but] was once formerly 168 Passaic Avenue" and "information [is needed] regarding [sidewalk repair] permits on this additional address and . . . tree." Castro's counsel certification in support of the motion stated that during a deposition of a Congregation of Tifereth Isreal official taken after the discovery end date, the official "did not remember the property having once been 168 Passaic Avenue," and therefore "additional time is requested in order to conduct permit and records requests at the 168 Passaic Avenue address."

(Pa298). Counsel also asserted he wanted to "depose . . . [the synagogue] employee . . . who conducts the day to day custodial work at the location and may have more first[-]hand knowledge of the construction work on the . . . sidewalk."

We "generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir.1985)). We assess the judge's interpretation of applicable law de novo.

To meet the exceptional circumstances standard permitting extension of a discovery end date after the time has elapsed, a party must show:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the

control of the attorney and litigant seeking the extension of time.

[Rivers, 378 N.J. Super. at 79; see also R. 4:24-1(c).]

Based upon our de novo review, Barlyn v. Dow, 436 N.J. Super. 161, 170 (App. Div. 2014), we discern no basis to conclude the court abused its discretion by misapplying this discovery standard, C.A. ex rel. Applegrad v. Bentolila, 219 N.J. 449, 459 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)).

We are fully mindful of the catastrophic injuries Castro sustained from the ill-fated accident. Nevertheless, Castro had more than ample time to complete discovery—665 days due to five extensions. There is no indication the additional discovery he sought could not have been obtained during the approximately twenty-two-month discovery period. There is no showing that the synagogue's address change was not known before nor could not have been known through due diligence prior to the discovery end date. Moreover, there is no contention defendants' conduct delayed or impeded Castro's ability to complete discovery. Given these facts, we discern no reason to conclude the court's order to deny Castro's motion to reopen and extend the discovery end date was an abuse of discretion.

To the extent we have not specifically addressed any of plaintiff's arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2573-23